STATE *vs.* GEORGE H. HAMLIN, Executor, and others.

Penobscot.    Opinion July 27, 1894.

*Taxes.    Collateral Inheritance.    Constitutional Law.    Exemptions.    U. S.
Const. 14th Amendt. Maine Const. Art. I, § § 1, 6, 21, Art. IX, § § 7, 8,
N. Y. Stat. 1885, c. 483, Maine Stat. 1893, c. 146.*

Section 1 of chapter 146 of the Statutes of 1893, imposing a tax on collateral
inheritances, is not a tax upon real and personal estate, within the meaning of
Article IX, § 8, of the Constitution of Maine, but is an excise, clearly within
the constitutional powers of the Legislature to impose.

The act is not in conflict with the 14th amendment to the constitution of the
United States.

The five hundred dollar exemption, provided in section 1 of the act, is not one
exemption from the *corpus* of the estate but is an exemption of that sum
from each and every legacy or share given or descending to persons within
the classes subject to the excise.

ON REPORT.

This was an appeal by the State from a decree of Judge of
Probate, for Penobscot county, made by the judge in the estate
of Edward Mansfield, late of Orono, deceased, testate.    The
question arose under the statute of 1893, c. 146, entitled, "An
act to tax collateral inheritances."

Upon the application of the executor of the will, and after
due notice, and hearing, the judge made the following decree :—

(1.)    That under sections one and two of said act, there shall
be deducted the sum of five hundred dollars, from each legacy
and devise in said will, which comes under the operation of said
law ; and that the tax under said act shall be computed upon
the value of what remains of each of said legacy and devise
after deducting therefrom five hundred dollars.

The State thereupon appealed and assigned the following
reasons of appeal :—

(1.)    That said decree relieves said estate from taxation under
said act to a greater extent than said law contemplates.

(2.)    That the exemption provided for in said act is a single
exemption of five hundred dollars from the whole property,
which by the terms of said will is subject to the provisions of

said act, and not an exemption of five hundred dollars from each legacy or devise affected by said act, as said decree assumes.

(3.) That by the decree aforesaid a very much larger sum than five hundred dollars will be so exempted.

The executor and legatees under the will also contended that the act was unconstitutional.

The case came up for hearing in the court below, as the Supreme Court of Probate, in Penobscot county; and by agreement of all the parties was reported to the law court for the Middle District to be heard at the May term. All formal objections to the appeal, or to the manner of reporting the case, were expressly waived by the parties.

*C. A. Bailey,* County Attorney, for the State.

*C. J. Dunn,* for executor.

The statute violates the provisions of Art. 14 of the Federal Constitution providing; "Nor shall any State deprive any person of life, liberty or property, without due process of law," in that it does not require that any notice shall be given to the persons or bodies corporate upon whom the taxes are to be imposed, as to determining the value of their estates or afford them a reasonable opportunity to be heard. *Davidson* v. *New Orleans,* 96 U. S. 97; Cooley on Con. Lim. 5th Ed. 496, note 2; *Stewart* v. *Palmer,* 74 N. Y. 188.

The statute is unconstitutional in that it confers upon the probate court powers and duties not authorized or contemplated by our Constitution. Con. of Maine; R. S., c. 63; Cooley Con. Limitation, 211.

Statute requires the probate court to construe wills. Uniformity and equality are essential to a valid tax. Cons. of Maine, Art. 9, § 8. *Curry* v. *Spencer,* 61 N. H. 624. Inoperative within terms specified in § 2. The value of the prior estate required by § 2 of the statute to be determined within sixty days after the death of the testator, cannot in all cases be accomplished for the reason that in many estates executors and administrators are not, and cannot be qualified to act within sixty days after the death of the testator.

Nor can the tax be paid by the executor within one year from the death of the testator as required by § 4 of the statute in question, as creditors are allowed two and one half years in which to present their claims.

The value of the estate or of the legacy cannot be determined within one year after the death of the testator.

The statute conflicts with and does not repeal existing probate statutes.

The method provided for by the statute to determine, for the purposes of taxation, the value of future and contingent estates is unjust and unconstitutional. Cooley on Taxation, 2d Ed. 237, 352, 493; Cooley on Cons't. Lim. 612, 613, 622.

It provides no method of determining the value of remainders where a life-estate, with power of disposal, is given.

It must be applied to the legacies only; otherwise it would be applied as a direct tax upon property, and therefore unconstitutional, because it would be unequal and unjust.

*F. A. Wilson*, for legatees and devisees.

*A. W. Paine*, submitted a brief.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WHITEHOUSE, STROUT, JJ.

STROUT, J. This appeal from the decree of the judge of probate arises under chapter 146, § 1, of the statute of 1893. That section is as follows:

"Sect. 1. All property within the jurisdiction of this State, and any interest therein, whether belonging to inhabitants of this State or not, and whether tangible or intangible, which shall pass by will or by the intestate laws of this State, or by deed, grant, sale, or gift made or intended to take effect in possession or enjoyment after the death of the grantor, to any person in trust or otherwise, other than to or for the use of the father, mother, husband, wife, lineal descendant, adopted child, the lineal descendant of any adopted child, the wife or widow of a son, or the husband of the daughter of a decedent, shall be liable to a tax of two and a half per cent of its value, above

the sum of five hundred dollars, for the use of the State, and all administrators, executors, and trustees, and any such grantee under a conveyance made during the grantor's life shall be liable for all such taxes, with lawful interest as hereinafter provided, until the same shall have been paid as hereinafter directed."

It is strenuously claimed by the appellee, that the act is in violation of the constitutional provisions, that all men, "have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property." Art. 1, sec. 1.

"Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." Art. 1, sec. 21.

"All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof." Art. IX, sec. 8. Also of the fourteenth amendment to the Constitution of the United States.

Succession duties or taxes have been in existence in other countries for centuries, and have been regarded with favor, as a convenient and comparatively non-burdensome means of revenue. They were well known in Roman jurisprudence (Gibbon's Rome, Vol. 1, p. 133), and were imposed upon all successions, except those to the nearest relatives and to the poor. The practice has long been resorted to in European countries, and was introduced in England in the last century, and was enlarged from time to time till 1853, when it was extended to all successions to real property, chattels real, and a vast variety of personal property and rights.

In this country, they were imposed by congress, by acts of June 30th, 1864, and July 13th, 1866, which were repealed in 1870. They were held by the Supreme Court of the United States, to impose an excise tax or duty, and, as such, not in violation of the Constitution of the United States. *Scholey* v. *Rew*, 23 Wall. 331.

The policy of taxing collateral inheritances was adopted in Pennsylvania, in 1826, and has been adhered to ever since. In

that State the statute has been constantly recognized as valid by its supreme court. *Strode* v. *Commonwealth*, 52 Pa. Sta. 181; *Orcut's Appeal*, 97 Pa. Sta. 179; *Bittinger's Estate*, 129 Pa. Sta. 338.

In Maryland, Virginia, Delaware, New York and several other States, laws imposing succession taxes have been enacted and are now in force; that of Virginia dating back to 1844, of Delaware to 1869, Maryland to 1864; the others of more recent date. In Maryland the act was attacked as in violation of the declaration of rights, in the constitution of 1864, which, declared, "that the levying of taxes by the poll is grievous and oppressive, and ought to be prohibited; that paupers ought not to be assessed for the support of the government, but every other person in the State, or person holding property therein,. ought to contribute his proportion of public taxes, for the sup-- port of government, according to his actual worth in real or personal property; yet fines, duties or taxes may properly and. justly be imposed or laid, with a political view, for the good. government and benefit of the community." But the Court of Appeals held the statute to be constitutional. Robinson, J.,. in delivering the opinion of the court, said : " We have not the' slightest doubt as to the constitutionality of the law. . . .. The restrictions imposed by it [the constitution] upon the legis- lative power, as to the objects of taxation, are explicitly de- clared. Poll taxes are denounced as grievous and oppressive, paupers are exempted from assessment; and all other persons are required to pay their proportion of public taxes, according to the value of their property. Arbitrary taxes on property without regard to value, are expressly prohibited, and all measures for the collection and imposition of taxes upon *property* are required to conform to this general principle of equality. Whilst thus providing for a *uniform* mode of taxation on property, it was not the purpose of the framers of the consti- tution to prohibit any *other species of taxation*, but to leave the legislature the power to impose *such other* taxes as the neces- sities of the government might require." *Tyson* v. *State*, 28 Md. R. 586; *State* v. *Dalrymple*, 70 Md. 294.

In Virginia, the Supreme Court held the same doctrine in *Eyre* v. *Jacob*, 14 Gratt. 430. In that case the court said: "The right to take property by devise or descent is the creature of the law, and secured and protected by its authority. The legislature might, if it saw proper, restrict the succession to a decedent's estate, either by devise or descent, to a particular class of his kindred, say to his lineal descendants and ascendants, and it might impose terms and conditions upon which collateral relatives may be permitted to take it; or it may tomorrow, if it please, absolutely repeal the statute of wills and that of descents and distributions, and declare that, upon the death of a party, his property shall be applied to the payment of his debts and the residue appropriated to public uses."

The statute of New York, chap. 483, laws of 1885, contains substantially the same provisions, and nearly the same exemptions, as the first section of chap. 146 of the laws of 1893, of our State. It does not differ in principle from ours. The question of the constitutionality of this act came before the New York Court of Appeals, in *Matter of McPherson*, 104 N. Y. 306, and that court said: "We entertain no doubt that such a tax can be constitutionally imposed. The power of the legislature over the subject of taxation, except as limited by constitutional restrictions, is unbounded. It is for that body, in the exercise of its discretion, to select objects of taxation. It may impose all the taxes upon land, or all upon personal property, or all upon houses or upon incomes." A like statute in New Hampshire was held, by the Supreme Court of that State, to be in violation of that State's constitution, which empowered the legislature to assess and lay taxes, but expressly limited that grant of power to, "proportional and reasonable assessments, rates and taxes, upon all the inhabitants and residents within the said State, and upon the estates within the same." And by sec. 12 of the bill of rights, that every member of the community, "is bound to contribute his share to the expense" of the State. *Curry* v. *Spencer*, 61 N. H. 624.

We are not aware that the question has been decided in any other State, where similar statutes exist. These decisions of

the courts, being based upon constitutions containing provisions, in some cases unlike, and in others like, but not the same, as our constitution, have a lessened weight as authority here. In Virginia the constitution required taxes to be equal and uniform. In Maryland the constitutional provision required every person holding property to contribute his proportion of public taxes, according to his actual worth in real or personal property. But whatever may be the particular language of the several State constitutions, all the cases assume that the constitution, either in terms or by necessary implication, requires taxation of property to be equal and uniform, and in all of them, except the New Hampshire case, succession taxes are regarded as special taxes or duties, or, more exactly, excises, not falling within the regular and ordinary annual taxation of property, contemplated and provided for and guarded by constitutional provisions and limitations.

The statute under consideration provides a subject and mode of taxation not heretofore resorted to in this State. The act provides sufficient opportunity to parties interested to be heard, and have their rights protected, and cannot be deemed to conflict with Article 1, section 6 of the constitution, which provides that no person shall be deprived of his property or privileges, but by judgment of his peers, or by the law of the land; nor with section 21 of the same Article, which prohibits the taking of private property for public uses without just compensation. Perhaps the latter provision is limited to the exercise of the right of eminent domain, and does not extend to the subject of taxation. The word, "compensation" seems to imply a money or other valuable consideration, as distinguished from the protection of life and property afforded by the State as a return for the tax contributions of its citizens.

Does the act conflict with the constitutional provision which requires all taxes assessed upon real and personal estate to be apportioned and assessed equally, according to the just value thereof? The first constitution of Maine provided that, "while the public expenses shall be assessed on polls and estates, a general valuation shall be taken at least once in ten years."

Art. IX, § 7. Section 8, immediately following, was, "All taxes upon real estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof." These provisions remained unchanged until 1875, when, by an amendment, the words, "and personal" were inserted after the word "real" in the eighth section. Prior to this amendment, there was no express constitutional requirement that taxes on personal property should be uniform; but it was left to the Legislature to determine the subjects, mode and rate of taxation of personal property, in its discretion, and without limitation or restriction, unless such exercise of power should degenerate into such arbitrary, oppressive and unreasonable exactions, as to be subversive of the principles of the constitution and the rights of the people. Cooley's Constitutional Limitations, pp. 616, 617.

The two sections 7 and 8, as they now stand, must be construed together, to determine their scope and extent. Section 7 provides that, so long as the public expenses shall be assessed on polls and estates, to equalize the burden as nearly as practicable, a general valuation shall be taken as often as every ten years. By its terms, it necessarily implies a periodical and regularly recurring assessment of predetermined amounts, proportioned to the entire estates within the taxed district, to meet continuing and regularly recurring expenses; while section 8, manifestly referring to the same class of general taxes, provides for an equal apportionment and assessment according to value. It is clear that these sections contemplate only the general, constantly recurring assessment upon the same property, and do not include occasional, exceptional and special subjects and modes of taxation. The constant practice, hitherto unobjected to, of imposing a duty, or exacting a fee, for the right to exercise certain vocations, not illegal in themselves, but made so by statute for the purpose of deriving a revenue therefrom, such as that required of itinerant vendors, retail liquor dealers, while a license law existed, innholders, auctioneers, insurance brokers, etc., notwithstanding all the real and personal property of such persons, was assessed in common with the property of all others

in the State in the general and recurring assessments, conclusively shows that many subjects of taxation have constantly been regarded as not falling within the prohibition of sections 7 and 8 of the constitution. The tax imposed upon the franchises of railroads and other corporations, upon a basis which did not result in equal taxation according to value and proportion, has been held by this court, as not in violation of the constitution, but within the legitimate province of the Legislature. *State* v. *Telegraph Co.* 73 Maine, 527 ; *State* v. *Maine Central R. R.* 74 Maine, 382. So also the extensive exemptions of property from all taxation, such as the property of literary, benevolent and charitable institutions, acquiesced in for many years, without objection, afford a practical construction of sections 7 and 8, that they do not require an absolute equality ; but that the Legislature may, in its discretion, exempt from taxation classes of property within the terms of these sections, although the effect is to increase the rate upon other assessable property, and may select classes of subjects from which duties and excises may be required, not, however, degenerating into arbitrary and oppressive burdens. The duties exacted by the State from justices of the peace, and other officers, and attorneys before admission to the bar, have never been regarded as a violation of the constitutional provisions in regard to taxation ; but as excise taxes, rightfully levied. Cooley's Constitutional Limitations, pp. 617, 618, 619 ; *Portland Bank* v. *Apthorp*, 12 Mass. 256.

It is evident, therefore, that these constitutional requirements do not include every species of taxation, but all special cases like those referred to are, by implication, excepted.

The tax provided for in the statute under consideration is clearly an excise tax. *Scholey* v. *Rew*, 23 Wall. 346. The whole tenor and scope of the act is one of excise, and not a tax upon property, as that term is used in the constitution. It is not laid according to any rule of proportion, but is laid upon the interests specified in the act, without any reference to the whole amount required to be raised for public purposes, or to the whole amount of property in the State liable to be assessed for public purposes. It is true that the act contains some language

indicating a tax upon property; but it should be construed according to its essential principle, object and effect. Substance, and not form or phrase, is the important thing. All exactions of money by the goverment are taxes; but they are not all levied by assessment upon values. The latter class refers to the burdens recurring periodically, which are assessed upon valuations of property, made at stated intervals. DANFORTH, J., in delivering the opinion of the court in *State* v. *Telegraph Company, supra,* said: "Such is the variety and extent of meaning attached to the word tax, or taxes, that no argument either way can be drawn from its use. It has been at different times applied to nearly if not quite every burden imposed upon persons, property or business for the support of government, and in acts for raising a revenue for public purposes it seems to be used as meaning the same thing as impost, duty or excise."

The tax under this statute, is once for all, an excise or duty upon the right or privilege of taking property, by will or descent, under the law of the State. It is uniform in its rate as to the entire class of collaterals and strangers, which satisfies the constitutional requirement of uniformity. *State* v. *Telegraph Co. supra; Brewer Brick Co.* v. *Brewer,* 62 Maine, 74. "It is not levied as property taxes usually are. There is no given sum to be assessed in which the percentage is fixed by valuation, but the percentage is fixed by law, leaving the amount to be ascertained by the valuation." The value of the property is resorted to, to measure the amount of the excise. The act taxing telegraph companies, in terms imposed a tax of two and one half per cent on *the value* of any telegraph line, etc., and it was strongly urged by counsel that this was a property tax, and not an excise, and therefore violated the constitutional provision requiring equal taxation; but this court in *State* v. *Telegraph Co. supra,* held that the tax was an excise, and clearly within the constitutional right of the Legislature to impose. *Connecticut Ins. Co.* v. *Com.* 133 Mass. 162-163. The same reasoning applies with equal force to the tax on collateral inheritances. *State* v. *M. C. R. R. supra.*

The constitution guarantees to the citizen the right of acquir-

ing, possessing and protecting property, Article 1, section 1, which includes also the right of disposal. But the guaranty ceases to operate at the death of the possessor. There is no provision of our constitution, or that of the United States, which secures the right to any one to control or dispose of his property after his death, nor the right to any one, whether kindred or not, to take it by inheritance. Descent is a creature of statute, and not a natural right. 2 Blackstone's Com. pp. 10, 11, 12, 13; *Strode* v. *Com. supra.* At common law, prior to the statute of distribution in England, 22 and 23 Car. 11, descent of personal property could hardly be recognized and even after the statute requiring administration to be granted; the administrator, after the payment of the debts and funeral expenses of the deceased, was entitled to retain to himself the residue of his effects, the court holding that there was no power to compel a distribution. 2 Bl. Com. 515; *Edwards* v. *Freeman*, 2 P. Wms. 442.

Degrees of kindred, and the laws of descent, in the several states of the Union, differ widely. In this State there have been frequent changes in the law governing the subject. It is entirely within the province of the Legislature to determine who shall and who shall not take the estate, and the proportion in which they may take, and whether severally, or as joint tenants, *per capita* or *per stirpes*. In the absence of constitutional prohibition, the Legislature is supreme, and may dispose of an intestate decedent's estate, after payment of his debts, to any class or classes of his kindred, to the exclusion of any class or classes. It may limit heirship to lineal descendants, to the absolute exclusion of all collaterals. If it permits, as our laws now do, collateral kindred to inherit, no reason is perceived why the State is debarred from exacting an excise or duty from such collateral, for such privilege allowed by the State. It is necessary to make such excise uniform as to the entire class of collaterals. It must not tax one and exempt another in the same class. But it is not a violation of this principle to require an excise from all collaterals and strangers, and exempt from the excise classes nearer in blood to the decedent.

The right to dispose of estates by will is of very ancient origin, but is a creature of municipal law, and not a natural right. Redfield Wills, c. 1, § '1 ; *Mager* v. *Grima*, 8 How. 494. Before the statute of wills in England, 32, 34 and 35, Henry VIII, the right did not extend to real estate, and was limited as to personal, if the testator left a widow or children. If he had both, he could dispose of but one third of his personal estate by will; if but one, he could dispose of one half. This right has since been extended by statute to include real estate, and all personal. The restriction has never existed in this country, except as to widows, where right to dower and a share of the personal estate is secured by statute in most of the states, and in Louisiana, where the rules of the civil law prevail. Our statute of wills authorizes certain persons to make wills, and prescribes the mode of their execution. This is a statute right, and it is competent for the law making power to modify or take away the right. If the right itself can be wholly destroyed, it must be competent to impose conditions and limitations upon it. The greater always includes the less.

While it has always been the policy of our law to allow collaterals to inherit, in default of lineal descendants, and to allow the disposal of estates by will, which take effect only at the death of the owner, and when his ownership has ceased, the policy may be changed if the Legislature so determine ; and it is competent for it, if it chooses, to retain this general policy, and to annex to the privilege of taking a decedent's property, by descent or will, such conditions as it may deem wise. An excise tax upon the value of the property so allowed to be received by the collateral or stranger to the blood, leaves him in much better condition than an absolute withdrawal of the privilege would. He cannot complain of unjust taxation, when the state allows him to take a property, subject to a duty of two and one half per cent when the state has the right to exclude him from the whole.

The exemption from the tax of certain classes, not any part of the classes taxed, is unobjectionable on constitutional grounds. *State* v. *Telegraph Co. supra.*

We think the act of 1893 imposed an excise tax upon certain inheritances and devises, and conveyances, to take effect after the death of the grantor; and is not a tax upon property within the meaning of Art. IX, sec. 8 of the constitution, and does not conflict with any provision of the constitution of Maine.

It is claimed by the appellant, that the act is in conflict with the fourteenth amendment to the Constitution of the United States, which prohibits any State from depriving, "any person of life, liberty or property, without due process of law." It is argued that the act fails to furnish sufficient means to parties interested for the protection of their rights, and confers upon probate courts powers and duties not authorized or contemplated by our constitution. The act, section 12, provides for an appraisal of the estate subject to the excise, upon application to the probate court, by the State assessors, or any person interested in the estate; and section 13, the probate court, having jurisdiction of the settlement of the estate, is authorized to, "hear and determine all questions in relation to said tax that may arise," etc., "subject to appeal as in other cases." These provisions fully secure the rights of all parties interested, and satisfy the requirement of, "due process of law." The act applies equally to citizens of this and other States, and therefore is not in conflict with another provision of the fourteenth amendment, that, "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Whether the parties subject to the excise take by will or descent, it is only under and by virtue of the laws of this State that the right or privilege to take at all exists; and when that law places all upon an equality, as this act does, there can be no violation of this constitutional provision, in letter or spirit.

The question whether the exemption of five hundred dollars in the first section, is an exemption from the *corpus* of the estate, or a several exemption of that sum from each portion of the estate passing by will or descent to persons outside the exempted classes, is raised by the appeal. A careful examination of the statute satisfies us that the Legislature intended the exemption

to apply to each taker within the class subject to the duty. The language of section 1, is, that "all property . . . which shall pass by will or by the intestate laws of this State . . . other than to or for the use of the father," etc., . . . "shall be liable to a tax of two and one half per cent of its value above the sum of five hundred dollars," etc., and any grantee under a conveyance made during the grantor's life, to take effect after his death, "shall be liable for all such taxes." It is difficult to construe this language to mean other than that such taker, subject to the tax, shall be liable upon the amount received, above five hundred dollars. A grantee is made liable to "such taxes." What taxes? Plainly, two and one half per cent, upon the amount received in excess of five hundred dollars. This construction is greatly aided by the second section, which, in dealing with limited estates to the excepted classes, (whether including all or part of decedent's estate) and remainder to the taxable class, provides for an appraisal of the value of the limited estate, and when that is ascertained, that value, "together with the sum of five hundred dollars," is to be deducted from the value of such property, and the remainder becomes subject to the tax, or duty. This provision is plainly inconsistent with the claim that the five hundred dollars exemption, is to be taken once for all from the *corpus* of decedent's entire estate. The Legislature undoubtedly intended the same rule to apply in both sections. We think, therefore, that the decree of the Probate Court was correct, and the entry must be,

*Decree of Probate Court affirmed.*