**REVENUE CABINET COMMONWEALTH OF KENTUCKY,**
Appellant,

v.

**ESTATE OF Forrest C. MARSHALL, Deceased, Appellee.**

No. 86–CA–2002–MR.

Court of Appeals of Kentucky.

Feb. 19, 1988.

Celia M. Dunlap, Legal Service Section, Revenue Cabinet, Frankfort, for appellant.

Larry Cleveland, Young, Cleveland & Ayer, Frankfort, for appellee.

Before COMBS, LESTER and MILLER, JJ.

LESTER, Judge.

This is an appeal from a judgment declaring KRS 140.300(4)(c) unconstitutional as

being in contravention of Sections 2 and 171 of our state constitution as well as Section (1) of the Fourteenth Amendment to the Federal Constitution.

This litigation presents an issue of first impression best left to our court of last resort, but in the judicial scheme, we are obligated to render an opinion.

This Commonwealth has had an abiding interest in the welfare of its farmers for as is pointed out in 3 Am.Jur.2d *Agriculture* § 9 at 943 (1986):

In an agricultural state it is reasonable for the legislature to offer inducements to agriculture through tax laws. Although it is generally held, in jurisdictions with constitutions that require taxes to be uniform, that an exemption of agricultural land from taxation results in an unconstitutional discrimination, if a separate classification of agricultural lands for tax purposes is not prohibited, or if it is specifically authorized by constitutional provisions, land devoted to agricultural purposes may properly be given the benefit of lighter tax burden than that imposed on other land or even exempted altogether from certain taxes. Among other reasons, the state's power to offer inducements to agriculture and to improve a depressed economic condition of that industry is held to justify the discrimination in favor of agricultural lands.

Exemplifying our concern was the adoption of 172A of our Constitution which mandates that the farmers' lands be assessed according to its value for agricultural use as opposed to fair market value. In obedience to the will of the people the General Assembly has enacted several laws which foster continued farming among which was KRS 140.300, a statute permitting, under certain conditions, that upon the death of the owner of land that was utilized for agricultural purposes for five years prior to the demise and would continue to be so used for a like period thereafter by the surviving spouse and/or children, then the property should be assessed at its agricultural value for inheritance tax purposes.

In order to so qualify, subsection (4)(c) states that the

Fair cash value [of the land] exceeds fifty percent (50%) of the gross taxable estate of the decedent for Kentucky inheritance purposes.

As has been pointed out by a sister Judiciary, the primary goal of a preferential farmland assessment is to save the family farm and to provide farmers with some economic relief by permitting farmlands to be taxed at a lower assessment as ongoing farms rather than any other basis. *Urban Farms, Inc. v. Wayne Passaic County,* 159 N.J.Super. 61, 386 A.2d 1357 (1978). This jurisdiction has not only subscribed to affording the economic relief during the lifetime of the farmer through the medium of Section 172A, but has attempted to preserve the farm operation for the benefit of the surviving spouse and the children by offering a lower assessment if the agricultural use continues, at least for five years. This is a valid and vital state interest. However, the legislature distinguished between the farmer whose major asset was his land and those who had accumulated other property exceeding the value of his land, and, in a sense, divided the farming class into two subclasses, or putting it more succinctly, the poor farmer and the wealthy farmer. It is this division that is attacked by the court and supported by the appellee as being violative of Sections 2, 171 and 172A of our Constitution and the equal protection clause of the Federal Constitution.

In November, 1969, the electorate of Kentucky mandated in part:

Notwithstanding contrary provisions of sections 171, 172, or 174 of this Constitution—

The general assembly shall provide by general law for the assessment for ad valorem tax purposes of agricultural and horticultural land according to the land's value for agricultural or horticultural use.

Pursuant to directions, the General Assembly enacted several statutes dealing with farm assessments, one of which was KRS 140.310(1) to the effect:

Agricultural or horticultural land may be assessed at its agricultural or horticultural value in a decedent's estate for Kentucky inheritance tax purposes if the agricultural or horticultural land is qualified real estate and is passing to a qualified person or persons.

In an effort to define "qualified real estate" and "qualified person or persons" the Legislature provided at KRS 140.300(4)(a)(b)(c) and (5):

(4) "Qualified real estate" means real property which:

(a) Is either horticultural or agricultural land;

(b) Has been used for agricultural or horticultural purposes for five (5) years prior to the death of the owner of the real estate or a joint owner thereof; and

(c) Fair cash value exceeds fifty percent (50%) of the gross taxable estate of decedent for Kentucky inheritance tax purposes.

(5) "Qualified person" means the spouse of and/or the children (including adopted children) of and their spouses, if any, of a deceased owner of agricultural or horticultural land and is a person who proposes to devote the real property to agricultural or horticultural purposes for at least five (5) years after the death of the decedent in whose estate the agricultural or horticultural land is subject to assessment.

Forrest C. Marshall died January 17, 1982, leaving an estate consisting of 48% farm land with the balance composed of stocks, bonds, cash and a pickup truck. Relying upon KRS 140.300(4)(c), the appellant determined that the estate did not qualify for the agricultural evaluation so it assessed at fair cash value and issued a tax deficiency of $2,687.84. The appellee appealed to the Board of Tax Appeals raising constitutional issues over which the administrative agency concluded it was without jurisdiction. The circuit court, after citing *Kentucky Tax Commission v. Lincoln Bank & Trust Co.*, Ky., 245 S.W.2d 950 (1952) and making reference to *Burge v. Marcum*, Ky., 394 S.W.2d 908 (1965), said:

We perceive little or no difference in the effective consequences of KRS 140.300(4)(c) and the legislation involved in the above-cited cases. In the latter instance the amount of inheritance taxes which the heirs or devisees of a decedent who died owning real estate, which otherwise conforms to the definition of "agricultural land," will be required to pay is made to depend entirely upon whether or not the decedent owned other property, either non-agricultural real estate, tangible or intangible personal property, that exceeded or was less than the fair cash value of the agricultural real estate. A classification upon which deferential tax treatment of the estates of decedents who died owning farm land is made to depend upon the ratio of the value of such farm land to the total value of other assets in the estates of such decedents is constitutionally infirm.

Appellant urges that the court below was in error and that the statute be upheld. Appellee's position is embodied in a statement in its brief which points out:

Real estate that has been and will continue to be used for agricultural purposes and which is of exactly the same quality and value as other agricultural real estate prompts different and highly discriminatory tax consequences based solely on the percentage which the value of such real estate bears to the total value of different decedents' total taxable estates.

Appellee further contends that the purpose of the inheritance tax is to raise revenue citing *Kentucky Tax Commission, supra,* with which we agree. However, in the case at bench, we concern ourselves not with the general succession laws but what is the purpose to be served by Section 172A and KRS 140.300(4)(c) and 140.310. Historically, Kentucky has long been recognized as an agricultural and coal state and if the people want to give preferential treatment to those in a given area, then they have every right to do so for "[a]ll power is inherent in the people" and "they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may

deem proper." Sec. 4—Kentucky Constitution. Not only did the people alter assessments and valuations for the farming community by adoption of Section 172A, but also for the elderly. November, 1981, amendment to Sec. 170. We are fully aware that the General Assembly has the power to divide property into classes for taxation purposes, Sec. 171, but we find no prohibition against the establishment of subclasses within a general classification.

■ We are urged to examine this cause from the standpoint of the equal protection clause of the Federal Constitution. In doing so, we have learned that exacting equality is not as rigid in the field of taxation as it is in many other areas for in *The Bell's Gap Railroad Co. v. The Commonwealth of Pennsylvania*, 134 U.S. 232, 237, 10 S.Ct. 533, 535, 33 L.Ed. 892, 895 (1889), Mr. Justice Bradley, speaking for the Court, said:

> The provision in the XIV Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different grades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State Legislature, or the people of the State in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impractica-

ble and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying that the XIV Amendment was not intended to compel the States to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require, which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice and which every State, in one form or another, deems it expedient to adopt.

Nine years after *Bell's Gap, supra,* in a case arising out of Illinois wherein varying inheritance tax rates were imposed upon estates depending upon the worth thereof, involving the equal protection clause, Mr. Justice McKenna wrote in *Magoun v. Illinois Trust & Savings Bank,* 170 U.S. 283, 18 S.Ct. 594, 42 L.Ed. 1037 (1898):

> There is no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities and necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things.

> &ast; &ast; &ast; &ast; &ast; &ast;

> If there is unsoundness it must be in the classification. The members of each class are treated alike, that is to say, all who inherit $10,000 are treated alike-all who inherit any other sum are treated alike. There is equality, therefore, within the classes. If there is inequality it must be because the members of a class are arbitrarily made such and burdened as such upon no distinctions justifying it. This is claimed. It is said that the tax is not in proportion to the amount but varies with the amounts arbitrarily fixed, and hence that an inheritance of $10,000

or less pays 3 per cent, and that one over $10,000 pays not 3 per cent on $10,000 and an increased percentage on the excess over $10,000 but an increased percentage on the $10,000 as well as on the excess, and it is said, as we have seen, that in consequence one who is given a legacy of $10,001 by the deduction of the tax receives $99.04 less than one who is given a legacy of $10,000. But neither case can be said to be contrary to the rule of equality of the 14th Amendment. That rule does not require, as we have seen, exact equality of taxation. It only requires that the law imposing it shall operate on all alike under the same circumstances. The tax is not on money, it is on the right to inherit, and hence a condition of inheritance, and it may be graded according to the value of that inheritance. The condition is not arbitrary because it is determined by that value; it is not unequal in operation because it does not levy the same percentage on every dollar; does not fail to treat "all alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed."

The Court concluded that the power to make the classification laid within the province of the Illinois legislature the same as was said of our Kentucky General Assembly in *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). We find no violation of the 14th Amendment to the Federal Constitution.

■ We now turn to our state's constitutional provisions. There is no argument with the proposition that the Legislature has the power to create classes for purposes of taxation. Nothing in Section 171 prohibits that same body from denominating subclassifications within the general class so long as it does not act in an arbitrary manner. In *Booth's Ex'r. v. Commonwealth ex rel Jefferson County Attorney*, 130 Ky. 88, 113 S.W. 61 (1908), the court considered the effect of Section 171 upon a statute which exempted estates of less than $500 from inheritance taxes as opposed to those being in excess of that value being subject to the levy. Justice

Settle, speaking for the Court without a dissent being noted, said:

The provisions with respect to equality and uniformity in taxation found in section 171 of the Constitution apply to a direct tax on property. They do not limit the power of the Legislature as to the objects of taxation, but are more especially intended to prevent an arbitrary taxation of property according to kind or quality, without regard to value. We are, however, unable to see that the inequality and want of uniformity complained of by appellant exist in the statute under consideration, for every person not of the class exempted by the act from the payment of the tax, who takes from the estate of a decedent by succession or devise, pays a tax for the privilege, and this tax is proportioned to the value of the interest which he acquires. Nor does the exemption, where the estate is of the value of $500 or less, constitute inequality or unjust discrimination. *Magoun v. Illinois Trust & Savings Bank*, 170 U.S. 283, 18 Sup.Ct. 594, 42 L.Ed. 1037; *Eyre v. Jacob*, 14 Grat. (Va.) 422, 73 Am.Dec. 375.

In *Minot v. Winthrop*, 162 Mass. 113, 38 N.E. 512, 26 L.R.A. 264, it is said in reference to a complaint of inequality urged against an inheritance tax statute: "The tax imposed by the statute we are considering is said to be unequal because it is not imposed upon all estates and upon all heirs, devisees, legatees, and distributees. To make a distinction between collateral kindred or strangers in blood and kindred in the direct line in reference to the assessment of such a tax, either by exempting the kindred in the direct line or by imposing on collaterals and strangers a higher rate of taxation, has the sanction of nearly all states which have levied taxes of this kind. It has a sanction in reason, for the moral claim of collaterals and strangers in less than that of kindred in the direct line, and the privileges therefore greater. The tax imposed by this statute is uniformly imposed upon all estates and all persons within the description contained in it, and the tax is not plainly and grossly oppressive in amount." In *State v.*

*Hamlin,* 86 Me. 495, 30 Atl. 76, 25 L.R.A. 632, 41 Am.St.Rep. 569, it is said: "The constitutional requirement of uniformity is satisfied by a tax on the transmission of property by will or descent to strangers and collaterals, where it is uniform as to the entire class affected, although other classes of persons are exempt from the tax." So, if the rule as to uniformity should be applied to the statute under consideration, we should say that it conforms to the rule; for it only requires the same means and methods to be applied impartially to all the constituents of a class, to the end that the law shall operate equally and uniformly upon all persons in similar circumstances both in the privilege conferred and the liabilities imposed. In other words, the tax is uniform on what it is laid-the value of the succession, after deducting the exemption on which no tax is laid. It is upon so much of the legacy received as exceeds $500. No legacy of $500 or less is taxed at all, and each legacy over $500 is taxed equally as to the excess.

We see little distinction, if any, between a statute that creates a class of estates that is liable for no tax while others of a higher valuation are and a class of estates that are subject to an agricultural assessment and those of an increased amount being assessed at the fair cash value. In the case at bar, all estates where the farm land's fair cash value exceeds 50% of the gross taxable estate, it is assessed on an agricultural basis while, where it does not, it is assessed at the fair cash value. In other words, each class is taxed equally. In reaching this conclusion, we rely upon the reasoning of *Booth's Ex'r., supra,* which remains unreversed to date. We are also mindful that wherever possible we should seek to uphold the constitutionality of a statute and not usurp the function of the legislative branch of government. *Manning v. Sims,* 308 Ky. 587, 213 S.W.2d 577, 5 A.L.R.2d 154 (1948).

Much is made of the theory that the tax upon estates is a revenue raising measure, that being a declared purpose, *Lincoln Bank & Trust Co., supra,* does not preclude a second purpose or a purpose for a particular statute. Unfortunately, Kentucky has no service comparable to that which reports the proceedings of the congressional committees but we have been referred to the federal statute similar to KRS 140.300, namely, 26 U.S.C. § 2032A. Listed in the legislative history of The Tax Reform Act of 1976, we note one of the assigned reasons for the provision is:

> In addition, the estate tax can impose acute problems when the principal asset of the estate is equity in a farm or small business. Because assets are valued at their "highest and best use" rather than on the specific use to which the assets are being put and because these assets are illiquid, family members have been forced to sell farms and small businesses in order to pay the estate tax.
>
> To deal with these problems, the bill allows farms (and other family businesses) to be valued at their value for farming use (or other small business use) when they remain in the family, rather than be valued at the speculative market value. Also, in these cases the bill extends the time for payment of estate tax liability. These changes are intended to preserve the family farm and other family businesses to very important American institutions, both economically and culturally.

The foregoing is as applicable to the Kentucky farmer as it is to his counterparts on a national basis.

We find little merit in appellee's position that KRS 140.300(4)(c) violates Section 172A and since the judgment of the circuit court makes no reference to that section, we decline to comment further.

From what we have already said, it is apparent that we find no violation of Section 2 of our Constitution.

The judgment is reversed and the cause remanded for entry of judgment affirming the order of the Board of Tax Appeals which affirmed the final letter ruling of appellant.

All concur.