CURRY v. SPENCER & a.

Chapter 64, Gen. Laws, in relation to the taxation of legacies and successions, not being within the constitutional powers of the legislature, is void and inoperative.

BILL IN EQUITY, in which the plaintiff, as executrix of one Tebbetts, prays the advice and instruction of the court as to what, if any, tax the estate of the deceased is liable to pay, under Gen. Laws, c. 64, which provides that "All estates settled in the probate courts of this state, and all transfers of property from the dead to the living, by gift, bequest, or devise, and every succession made under the laws of this state regulating the distribution of intestate estates, exclusive of the just indebtedness of each and all of said estates, shall pay one per cent. on the value of said estates, to be deducted from each gift, bequest, or distributive share, by the administrator or executor, so that each gift, bequest, or distributive share shall pay its proportional rate: *Provided*, that all legacies or property passing by will or by the laws of this state to husband or wife, children or grandchildren of the person who died possessed as aforesaid, shall be exempt from tax or duty."

The only question intended to be raised is that of the constitutionality of this provision.

*C. C. Rogers* and *J. Minot*, for the plaintiff. I. The statute in question is an act of taxation. That such was the design of it appears from the report of the tax commissioners by whom it was originated. (Report, *p.* 29, &c.) The statutes themselves so designate it (G. L., *c.* 64, *p.* 163), and the practical operation and effect of it are merely for revenue. It was not designed for any other purpose, and therefore it cannot be sustained on the principle and reasons on which the various other special provisions in our statutes, relative to taxation in particular cases, are maintained. Though those involve the raising of revenue, yet it is really incidental, and with reference to a different and main object,—the promotion and protection of the public good and morals as, for instance, the exemption of certain property from taxation for the encouragement of manufactures; the taxation of deposits in savings-banks, to encourage economy and saving; the various license laws, to protect public morality, &c. From the nature of the subject-matter of the statute in question, it cannot have any even indirect effect or influence for any other purpose than revenue. The application of it is made entirely dependent on an event which is beyond the control of legislation and human effort—death.

II. It is unequal and unjust, and therefore is unconstitutional and void. *State* v. *U. S. & C. Express Co.*, 60 N. H. 219. It is unequal, because it relates to a particular class of property, estates by inheritance, and does not embrace all classes of property; and even with regard to the particular class referred to it makes discriminations, exempting inheritances by the wife or issue, and including only those by the collaterals. It does not impose the tax provided by it in place of any other tax on the same property, but it leaves that property still subject to all other taxation in common with other property, thus in effect making double taxation. The

rule established by our state constitution and bill of rights on this point cannot be weakened or qualified by any argument from convenience or expediency. *State* v. *U. S. & C. Express Co.*, above cited. Therefore the reasons assigned for this statute by the tax commissioners are insufficient to sustain it. The inequality and injustice of its provisions will appear on the examination of the reasons assigned by the tax commissioners for the law. Report of Tax Commissioners 30.

If it were true that the property included in this act escapes taxation under the general law, yet that would be the fault of the administration of the law, and not a sufficient reason why the general law should be allowed to remain and this additional burden be imposed; and most certainly no reason why this particular class of property should be singled out for that purpose.

It might be reasonable that the expense of administering the probate law should be borne by the business transacted in that office, but it would be unreasonable and unjust to impose the burden of administering that branch of the public business upon the estates there adjudicated, without applying the same principle to other departments of the public administration; and especially when, as by this law, the probate business is left to bear its proportion towards supporting the other branches of the government. But the inequality does not stop here. It does not impose the burden of the probate court upon the business there done, but it singles out a particular and comparatively small portion of that business which it subjects to such burden, and exempts from that burden another particular portion of the same kind of business, that is, inheritances by wife and children.

The real motive and reason for this legislation were not with any reference to justice or constitutional right, but simply because the property taxed could bear the burden; and the parties interested might willingly submit to the wrong, considering that the property on which it is imposed, and from which it is to be paid, came to them as a windfall from a distant relative, and without effort or exertion of their own.

The defendants, *pro se.*

*Tappan, Attorney-General,* for the state. If it had not been for some recent decisions in this state, notably that in the express company cases, no one, I apprehend, would have thought of questioning a mode of taxation which has obtained in most civilized countries since the time of Augustus, and which Gibbon says "was the most fruitful, as well as the most comprehensive," of any imposed by that emperor. Gibbon's Decline and Fall, *c. 6.*

Taxes on legacies and successions have been imposed in Holland, France, and Great Britain, and have been considered as eminently just and equitable. The same is true in this country, and such

taxes have been laid in many states; and whenever they have been questioned they have been sustained and upheld as proper, just, and constitutional, even in states with similar constitutional provisions as to "equal" and "proportional" taxation to those which are found in the constitution of New Hampshire.   The whole subject of the propriety and constitutional validity of such taxes has been elaborately considered in the following cases, to which I respectfully refer the court: *Williams's Case*, 3 Bland 259; *Eyre v. Jacob*, 14 Grat. 424; *Fox v. Commonwealth*, 16 Grat. 1; *Tyson v. State*, 28 Md. 577.

As the counsel for the defendants seem to rely wholly upon the opinion in the express cases (I have not seen their brief), I suppose it is claimed that this tax is "disproportional," "unequal," and imposes upon each of these defendants a burden beyond their "just share."   I am aware that a great deal is said in the express cases in regard to a person's paying more than "his share" of the public taxes, and it is undoubtedly true that any system of taxation which compels a man to pay any more than "his share" is unequal and vicious. But, in a case of this kind, what is "his share"? That it is merely his "proportional" share based solely on his property and estate, is, as it seems to me, mere assumption.   The party receiving a legacy or succession has an extra and additional civil right which requires additional legal machinery to make it secure.   It costs the state something to furnish a tribunal to uphold, protect, and transmit that right.   It is a right which all others in the state do not enjoy with him; and "his share," therefore, of the public burden would be his "proportional" tax based on his poll and estate in common with that of other citizens, and his extra percentage, tax, or duty, whatever it may be termed, which the legislature, in its broad discretion, has the power and right to impose to help pay for the extra and additional right which he enjoys under the law.   It comes clearly within the "protective power," and it does not seem to me that a tax-payer would be justified in resisting such a tax as this by force of arms, on the ground that he was paying more than "his share."

If this tax cannot be upheld, then it must be that the court intends to exclude all other modes of raising revenue, except the "proportional" tax on polls and estate.   But I do not understand that the court has gone to that length.

In Virginia it has been held that "the act of March 2, 1854, which imposes a tax upon collateral inheritances, is constitutional, notwithstanding a provision in the constitution that taxes shall be equal and uniform."   *Eyre v. Jacob*, 14 Grat. 422.   In that case it was contended that this tax on collateral inheritances was a tax on property.

But the court says,—"It cannot be regarded in a proper legal sense as a tax on property.   The property tax which the framers of the constitution were contemplating in the 22d section [or to

apply it to the case at bar, and substitute for *s.* 22,Virginia Constitution, Art. 5, Part 2, Constitution of N. H.] was the ordinary, annually recurring tax .for the support of the government, laid upon all property whatsoever. They had no reference to casual subjects of taxation, occurring irregularly and occasionally, which, though connected with property, were yet readily to be distinguished in their essential character and features. . . . But the argument is, that the tax is a certain *per centum* of the value of the estate, and the property pays it: it is therefore a tax on the property. But this is by no means a necessary logical conclusion. The intention of the legislature was plainly to tax the transmission of property by devise or descent to collateral kindred. It requires that a party thus taking the benefit of a civil right, secured to him under the law, should pay a certain premium for its enjoyment; and, as it was thought just and reasonable that the amount of the premium should bear a certain proportion to the value of the subject enjoyed, it is fixed at a certain *per centum* upon the value of the whole estate transmitted. And of this, surely, there can be no just complaints; on the contrary, it would have been unequal and unjust to require that a party receiving an inconsiderable property should pay as high a premium as one who takes a large and valuable estate. It is perfectly in accordance with the principles of natural justice and the spirit of the constitution, that the tax on such a subject should be regulated in strict proportion to the value of the benefit which it receives. . . . That the general assembly of Virginia, in the absence of a constitutional prohibition, does possess the power to tax a civil right or privilege like this, is beyond question. This is fully embraced within its general and comprehensive power upon the subject to which allusion has already been made. But it may be deduced from the very nature of the subject itself. The right to take property by devise or descent is the creature of the law, and secured and protected by its authority. The legislature might, if it saw fit, restrict the succession to the decedent's estate, either by devise or descent, to a particular class of his kindred, say to his lineal descendants; it might impose terms and conditions upon which collateral relations may be permitted to take it, or it may repeal the statute of wills, or that of descents and distributions, and decree that upon the death of a party his property shall be applied to the payment of his debts, and the residue appropriated to public uses. Possessing this sweeping power over the whole subject, it is difficult to see upon what ground the right to appropriate a modicum of the estate, call it a tax or what you will, as the condition upon which those who take the estate shall be permitted to enjoy it, can be successfully questioned." *Eyre* v. *Jacob,* 14 Grat. 428–431.

It seems to me that the reasoning of the court in this case applies with great force to the case under consideration. It will be seen from what has been said that the tax in question differs from

all other taxes declared by the court of New Hampshire to be un-constitutional, and in this, also, that it is avowedly and in terms of the act imposed to pay the expenses incurred by the state for the benefit of the identical property which is taxed.   The title of the act is, "An act to defray the costs of probate courts."   Almost the entire business of the probate courts relates to legacies and succes-sions, and it was deemed just and equitable that the individuals benefited thereby should help pay the burden thereof.   It is right, and it would seem to be in accordance with the terms of the con-stitution. that they should bear their shares of this specific burden.

In fact, the tax in question does not nearly pay the salaries of the probate court.   It appears by the report of the state treasurer for 1881 that the salaries amounted to $8,483.03; the tax, $5,492.36. Report of 1880 : Salaries amounted to $8,148.80; the tax, $2,449.97. This is called a tax, and in several places in the act it is called a duty; but, as has been frequently said by the court of this state, words and names are not to be so much considered as the intent of the legislature; and the intent of this statute was to defray the expenses of the probate court by levying a per cent. on the busi-ness transacted by it, in the same way as many other offices are supported by fees paid by citizens.   Of this nature are the jury fees, and other fees paid to the different courts of the state, the fees paid for the recording of deeds, of fence-viewers, railroad com-missioners, bank commissioners, commissioners on insolvent es-tates, etc.

If this act, in order to defray the expenses of the probate court, had imposed a fee of one dollar for the entry of each petition, and three dollars for letters of administration, etc., I do not believe that the court would have entertained a doubt of the constitution-ality of such fees.   But the principle of this act is the same, and, indeed, this act is more equitable and just; for, instead of imposing an arbitrary fee or duty, without reference to the benefit received, it apportions the fee or duty to the amount of the legacy, so that the legatee, or person receiving, pays just "his share" and no more.

Expenses of the probate court are paid in most of the states, I think, by fees, to wit, in Maine, Vermont, Connecticut, and many others; and in New Hampshire, while it was a colony, and at the time when the constitution of this state was created, and for years afterwards, until July, 1826, the judges and registers of probate were paid by fees in the same way.   If the framers of our consti-tution had considered such a mode of supporting probate courts unconstitutional, they would hardly have permitted the wrong to exist throughout their entire generation; and if the law, as it then existed, and as it exists now in other states, were on our statute book to-day, would the court declare it unconstitutional?   I think not.   But if there is any substantial difference in principle between the two methods of defraying the expenses of the probate courts, I confess I am unable to see it.

From the reasons that have been given, I think this tax is clearly distinguishable from the tax on express companies. It is not an untried experiment. It is not a novel mode of taxation, but one that has been resorted to by both state and national governments. A tax on legacies and successions was levied during the late war, and was continued for some years afterwards, yielding a large amount of revenue. Massachusetts paid yearly from this tax about three hundred thousand dollars; New Hampshire a large sum, the exact amount of which I have not ascertained. It is a tax the burden of which is not seriously felt, and one that bears as lightly as that of any that can be devised. No one who receives a godsend in the shape of a legacy, or succeeds to an inheritance such as this act contemplates, can reasonably object to the comparatively small amount he is required to contribute from it to pay the expenses to which the state is subjected to enable him to enjoy it.

BLODGETT, J. It is not to be questioned that the power to tax is vested in the legislature; that it is unrestricted, except when it is opposed to some provision of the federal or state constitution; and that it extends "to every trade or occupation, to every object of industry, use, or enjoyment, and to every species of possession." Nor is it to be questioned that the subject of the taxation in the present case is one within legislative control, because inheritances, distributive shares, and legacies are but creatures of the law; in fact, the only right to take or dispose of property by descent or devise is derived from the sovereign power of the state through its laws. "Wills, therefore, and testaments, rights of inheritance and successions, are all of them creatures of the civil or municipal laws, and accordingly are in all respects regulated by them." 2 Blk. Com. 12.

It must be conceded, then, that in the absence of constitutional prohibition, the legislature has the power to impose conditions by way of a tax upon legacies and successions; and so the only inquiry is, whether the taxation in question is excluded either by the express terms of the constitution, or by necessary implication, because if it is not, the power of the legislature must be regarded as having been properly exercised.

An answer to the inquiry is readily afforded; for while by Art. 5 of our constitution the legislature is empowered to assess and levy taxes, this grant of power is expressly limited to "proportional and reasonable assessments, rates, and taxes upon all the inhabitants and residents within the said state, and upon the estates within the same," and by the Bill of Rights (Art. 12) every inhabitant is bound to contribute only his share, which manifestly, and according to the uniform decisions of this court for more than half a century, cannot be more than his proportional share of the common burden.

All measures for the imposition or collection of taxes must therefore conform to this general principle of just equality; and hence it is immaterial whether the tax imposed by *c.* 64 is to be regarded as a tax on property or upon a civil right or privilege, for the same principle of equality and due proportion applies to every species of tax alike. And it is this consideration which broadly distinguishes the case at bar from those in Virginia and Maryland, to which our attention has been called, and in which a similar tax was sustained.

In the former state the constitution requires that taxes on property shall be uniform, and in *Eyre* v. *Jacob*, 14 Grat. 442, the objection taken was, that the property of the estate having been taxed, a tax on collateral inheritances must be opposed to the constitutional requirement; but the decision (by a divided court) is put expressly upon the ground that such a tax is not one on property, but on the privilege of succeeding to the inheritance, and that there is in that state no constitutional prohibition against taxing a civil right or privilege, or forbidding discrimination between lineal and collateral inheritances, because the requirement of uniformity applies to property only. A similar objection was taken and overruled in *Tyson* v. *State*, 28 Md. 577, on the ground that the restrictions imposed upon the legislative power as to taxation are explicitly declared in the state constitution, which only prohibits the taxation of polls and paupers, and requires a uniform mode of taxation on property according to its value; and that " whilst thus providing for a uniform mode of taxation on property, it was not the purpose of the framers of the constitution to prohibit any other species of taxation, but to leave the legislature the power to impose such other taxes as the necessities of the government might require."

It is apparent that these decisions can have no weight in New Hampshire; and immunity from disproportional taxation being expressly reserved in our bill of rights, and the power of proportional taxation only being granted the legislature by the constitution, we are unaware of any ground upon which the statute under consideration can be upheld; for if it is to be regarded as a tax on property, it is open to the objection of unequal and double taxation, and if it is to be regarded as a tax on a civil right or privilege, it is discriminating and disproportional. See *State* v. *U. S. & Can. Express Co.*, 60 N. H. 219.

Nor is the argument that its object was " to defray the cost of probate courts " entitled to any weight, because the constitutional rule of equality cannot be limited or qualified by any consideration of expediency or convenience. The purpose of the act cannot change its character in this respect. Good purposes in taxation are of no consequence if the effect is to subject the tax-payer to exceptional and invidious exactions.

But within the limits of legislative authority, we have nothing to do with the motives or policy of this or any other taxation, and,

therefore, whether the expense of administering the probate law should be imposed upon the business of that office is not for us to determine. "It is only where statutes are passed which impose taxes on false and unjust principles, or operate to produce gross inequality, so that they cannot be deemed in any just sense proportional in their effect on those who are to bear the public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void." *Bigelow*, C. J., in *Commonwealth* v. *Savings Bank*, 5 Allen 437. We therefore go no further than to say, that if the legislature deems it expedient to defray the expense of probate courts by a tax upon the recipients of estates therein adjudicated, such tax must be proportional and constitute only the just share of those upon whom it is imposed; that it cannot lawfully make discriminations and cast the burden upon one class of beneficiaries, and exempt all other classes from its operation; and that it cannot, therefore, for purposes of taxation, exempt legacies and successions to husband, wife, children, and grandchildren, and include only those by the collaterals and others than those specified.

It is true that this form of tax comes down from antiquity (Gibbon's Decline and Fall of the Roman Empire, *c.* 6), and that the tax commissioners of this state, by whom it was recommended, say that there can be no question of the legal right to impose it (Report, *p.* 31); but, nevertheless, we entertain a contrary opinion, because, under the reservations of the bill of rights and the limitations of the constitution, it is plainly founded upon pure inequality, and is simply extortion in the name of taxation; and it can therefore never be sustained in this jurisdiction so long as equality and justice continue to be the basis of constitutional taxation.

Chapter 64 must be declared void and inoperative, and the plaintiff is          .

*Advised accordingly.*

SMITH, J., did not sit: the others concurred.