## MAGOUN v. ILLINOIS TRUST AND SAVINGS BANK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 464. Argued January 28, 1898. — Decided April 25, 1898.

The inheritance tax law of Illinois, of June 15, 1895, (Laws of 1895, page 301), makes a classification for taxation which the legislature had power to make, and does not conflict in any way with the provisions of the Constitution of the United States.

THIS was a bill in equity filed in the Circuit Court of the United States in and for the Northern District of Illinois by Jessie Norton Torrence Magoun, a resident and citizen of New York, against the Trust Company, as executor of and trustee under the last will and testament of Joseph T. Torrence, deceased, and the county treasurer of Cook County, Illinois, both residents and citizens of Illinois, to remove a cloud from the real estate devised by said decedent to the complainant, and to enjoin the first-named defendant from voluntarily paying, and the county treasurer from collecting or receiving, the inheritance tax, amounting to more than $5000, alleged to be due upon the entire estate of said decedent, and for which the complainant's interest in said estate was contended by the county treasurer to be liable.

The bill set forth the will of the decedent, a description and valuation of the real estate and personal property left by him, amounting in all to $600,000 above his debts, and the demand of the county treasurer for the inheritance tax, which, by the act in question, is made a lien upon all of said property, the request of the complainant to the defendant Trust Company not to pay the same and to contest the constitutionality of the act; to refrain from paying the same voluntarily and without protest, and to await the commencement of legal proceedings to enforce the same; the refusal of the Trust Company to comply with this request, and its threat and in-

tention to pay said tax at once voluntarily, which payment could not be recovered if said law should hereafter be declared unconstitutional.

The bill also alleged that such payment would result in waste of the estate, and would be a breach of trust on the part of said executor, to the irreparable loss and injury of the complainant; that the alleged lien of the tax clouds the title to the real property and renders the same unmarketable, and that the act is in conflict with the provisions of the Fourteenth Amendment.

The Trust Company answered, admitting the allegations of fact in the bill, but submitting the question of the constitutionality of the law to the court and praying to be advised of its rights and duties in the premises as executor and trustee aforesaid and as an officer of the court.

The county treasurer denied that the act was unconstitutional, and admitted the allegations respecting the estate of the deceased, the interest of the complainant therein, the lien of the inheritance tax thereon and the demand made therefor.

The cause was heard on bill and answers, and a decree was entered dismissing the bill from which an appeal was prayed to this court and allowed.

The act under which the taxes complained of were assessed is entitled "An act to tax gifts, legacies and inheritances in certain cases and to provide for the collection of the same." Rev. Stat. Illinois, 1895, c. 120. It is only necessary to quote its first and second sections, which are as follows:

"§ 1. Be it enacted by the people of the State of Illinois, represented in the General Assembly, all property, real, personal and mixed which shall pass by will or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State, or if decedent was not a resident of this State at the time of his death, which property or any part thereof shall be within this State or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift, made in contemplation of the death of the grantor or bargainor or intended to take effect, in possession or enjoyment after such death, to any

person or persons or to any body politic or corporate in trust or otherwise, or by reason whereof any person or body politic or corporation shall become beneficially entitled in possession or expectation to any property or income thereof, shall be, and is, subject to a tax at the rate hereinafter specified to be paid to the treasurer of the proper county for the use of the State, and all heirs, legatees and devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed. When the beneficial interest to any property or income therefrom shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of the son or the husband of the daughter, or any child or children adopted as such in conformity with the laws of the State of Illinois, or to any person to whom the deceased, for not less than ten years prior to death, stood in the acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock, in every such case the rate of tax shall be one dollar on every hundred dollars of the clear market value of such property received by each person, and at and after the same rate for every less amount, provided that any estate which may be valued at a less sum than twenty thousand dollars shall not be subject to any such duty or taxes, and the tax is to be levied in above cases only upon the excess of twenty thousand dollars received by each person. When the beneficial interests to any property or income therefrom shall pass to or for the use of any uncle, aunt, niece, nephew or any lineal descendant of the same, in every such case the rate of such tax shall be two dollars on every one hundred dollars of the clear market value of such property received by each person on the excess of two thousand dollars so received by each person. In all other cases the rate shall be as follows: On each and every hundred dollars of the clear market value of all property and at the same rate for any less amount; on all estates of ten thousand dollars and less, three dollars; on all estates of over ten thousand dollars and not exceeding twenty thousand dollars, four dollars; on all estates over twenty thousand dollars and not exceeding fifty thousand dollars, five dollars; and on

all estates over fifty thousand dollars, six dollars : Provided, That an estate in the above case which may be valued at a less sum than five hundred dollars shall not be subject to any duty or tax.

"§ 2. When any person shall bequeath or devise any property or interest therein or income therefrom to mother, father, husband, wife, brother and sister, the widow of a son, or a lineal descendant during the life or for a term of years or remainder to the collateral heir of the decedent, or to the stranger in blood or to the body politic or corporate at their decease, or on the expiration of such term, the said life estate or estates for a term of years shall not be subject to any tax and the property so passing shall be appraised immediately after the death at what was the fair market value thereof at the time of the death of the decedent in the manner hereinafter provided, and after deducting therefrom the value of said life estate, or term of years, the tax prescribed by this act on the remainder shall be immediately due and payable to the treasurer of the proper county, and, together with the interests thereon, shall be and remain a lien on said property until the same is paid : Provided, That if the person or persons or body politic or corporate beneficially interested in the property chargeable with said tax elect not to pay the same until they shall come into the actual possession or enjoyment of such property, in that case said person or persons or body politic or corporate shall give a bond to the people of the State of Illinois in the penalty three times the amount of the tax arising upon such estate with such sureties as the county judge may approve, conditioned for the payment of the said tax, and interest thereon, at such time or period as they or their representatives may come into the actual possession or enjoyment of said property, which bond shall be filed in the office of the county clerk of the proper county : Provided, further, That such person shall make a full, verified return of said property to said county judge, and file the same in his office within one year from the death of the decedent, and within that period enter into such securities and renew the same for five years."

Opinion of the Court.

Two other cases were argued and 'submitted with this case, to wit, *Josephine C. Drake et al., Executors, etc., Plaintiffs in Error,* v. *Daniel H. Kochersperger, County Treasurer, etc., Cook County, Illinois,* error to the Supreme Court of the State of Illinois; and *Elizabeth Emerson Sawyer et al., Executors, etc., Plaintiffs in Error,* v. *The Same,* error to the Circuit Court of the United States for the Northern District of Illinois.

In the *Drake case* the Supreme Court of the State of Illinois sustained the statute as consonant with the constitution of the State. 167 Illinois, 122.

*Mr. William D. Guthrie* and *Mr. Benjamin Harrison* for plaintiffs in error. *Mr. Eugene E. Prussing* was on their brief.

*Mr. Edward C. Akin* and *Mr. Thomas A. Moran* for defendants in error. *Mr. Robert S. Iles* and *Mr. Frank L. Shepard* were on their brief.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

Legacy and inheritance taxes are not new in our laws. They have existed in Pennsylvania for over sixty years, and have been enacted in other States. They are not new in the laws of other countries. In *State* v. *Alston,* 94 Tennessee, 674, Judge Wilkes gave a short history of them as follows: " Such taxes were recognized by the Roman law. Gibbon's Decline and Fall of the Roman Empire, vol. 1, pp. 163–4. They were adopted in England in 1780, and have been much extended since that date. Dowell's History of Taxation in England, 148 ; Acts 20 George III, c. 28 ; 45 George III, c. 28 ; 16 and 17 Victoria, c. 51 ; *Green* v. *Craft,* 2 H. Bl. 30 ; *Hill* v. *Atkinson,* 2 Merivale, 45. Such taxes are now in force generally in the countries of Europe. (Review of Reviews, February, 1893.) In the United States they were enacted in Pennsylvania in 1826 ; Maryland, 1844 ; Delaware, 1869 ; West Vir-

ginia, 1887, and still more recently in Connecticut, New Jersey, Ohio, Maine, Massachusetts, 1891; Tennessee in 1891, chapter 25 now repealed by chapter 174, acts 1893. They were adopted in North Carolina in 1846, but repealed in 1883. Were enacted in Virginia in 1844, repealed in 1855, reënacted in 1863, and repealed in 1884." Other States have also enacted them — Minnesota by constitutional provision.

The constitutionality of the taxes have been declared, and the principles upon which they are based explained in *United States* v. *Perkins*, 163 U. S. 625, 628; *Strode* v. *Commonwealth*, 52 Penn. St. 181; *Eyre* v. *Jacob*, 14 Grat. 422; *Schoolfield* v. *Lynchburg*, 78 Virginia, 366; *State* v. *Dalrymple*, 70 Maryland, 294; *Clapp* v. *Mason*, 94 U. S. 589; *In re Merriam's Estate*, 141 N. Y. 479; *State* v. *Hamlin*, 86 Maine, 495; *State* v. *Alston*, 94 Tennessee, 674; *In re Wilmerding*, 117 California, 281; Dos Passos Collateral Inheritance Tax, 20; *Minot* v. *Winthrop*, 162 Mass. 113; *Gelsthorpe* v. *Furnell*, [Montana] 51 Pac. Rep. 267. See also *Scholey* v. *Rew*, 23 Wall. 331.

It is not necessary to review these cases, or state at length the reasoning by which they are supported. They are based on two principles: 1. An inheritance tax is not one on property, but one on the succession. 2. The right to take property by devise or descent is the creature of the law, and not a natural right — a privilege, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the States may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions; and are not precluded from this power by the provisions of the respective state constitutions requiring uniformity and equality of taxation.

The second principle was given prominence in the arguments at bar. The appellee claimed that the power of the State could be exerted to the extent of making the State the heir to everybody, and the appellant asserted a natural right of children to inherit. Of the former proposition we are not required to express an opinion. Nor indeed of the latter, for appellant conceded that testamentary disposition and inheri-

tance were subject to regulation. However, as pertinent to the subject, decisions of this court may be cited.

In *United States* v. *Fox*, 94 U. S. 315, 320, a law of the State of New York confining devises to natural persons and corporations created under its laws was considered; and a devise of land to the United States was held void. The court said :

" The power of the State to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted. It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated. *McCormick* v. *Sullivant*, 10 Wheat. 202. . . . Statutes of wills, as is justly observed by the Court of Appeals, are enabling acts, and prior to the statute of 32 Henry VIII there was no general power at common law to devise lands. The power was opposed to the feudal policy of holding lands inalienable without the consent of the lord. The English Statute of Wills became a part of the law of New York upon the adoption of her constitution in 1777; and, with some modification in its language, remains so at this day. Every person must, therefore, devise his lands in that State within the limitations of the statute or he cannot devise them at all. His power is bounded by its conditions."

In *Mager* v. *Grima*, 8 How. 490, 493, there was considered the validity of a law of Louisiana imposing a tax of ten per cent upon legacies, when the legatee was neither a citizen of the United States nor domiciled therein. Mr. Chief Justice Taney considered the legal question of easy solution, and disposed of it summarily. He said : " This is a plain case, and when the facts are stated the questions of law may be disposed of in a few words." After stating the case briefly, he further said :

" Now, the law in question is nothing more than an exercise of the power which every State and sovereignty possesses, of

regulating the manner and term upon which property, real or personal, within its dominion may be transmitted by last will and testament, or by inheritance ; and of prescribing who shall and who shall not be capable of taking it.   Every State or nation may unquestionably refuse to allow an alien to take either real or personal property situated within its limits, either as heir or legatee, and may, if it thinks proper, direct that property so descending or bequeathed shall belong to the State.   In many of the States of this Union at this day real property devised to an alien is liable to escheat.   And if a State may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy.   This has been done by Louisiana.   The right to take has been given to the alien, subject to a deduction of ten per cent for the use of the State.

"In some of the States laws have been passed at different times imposing a tax similar to the one now in question upon its own citizens as well as foreigners, and the constitutionality of these laws has never been questioned.   And if a State may impose it upon its own citizens, it will hardly be contended that aliens are entitled to exemption ; and that their property in our own country is not liable to the same burdens that may lawfully be imposed upon that of our own citizens.

"We can see no objection to such a tax, whether imposed on citizens and aliens alike, or upon the latter exclusively."

In *United States v. Perkins,* 163 U. S. 625, 627, the inheritance tax law of the State of New York was involved.   Mr. Justice Brown, speaking for this court, said :

"While the laws of all civilized States recognize in every citizen the absolute right to his own earnings, and to the enjoyment of his own property, and the increase thereof, during his life, except so far as the State may require him to contribute his share for public expenses, the right to dispose of his property by will has always been considered purely a creature of statute and within legislative control.   'By the common law, as it stood in the reign of Henry II, a man's goods were to be divided into three equal parts ; of which one went to his

heirs or lineal descendants, another to his wife, and a third was at his own disposal; or if he died without a wife, he might then dispose of one moiety, and the other went to his children; and so, *e converso*, if he had no children, the wife was entitled to one moiety, and he might bequeath the other; but if he died without either wife or issue, the whole was at his own disposal.' 2 Bl. Com. 492. Prior to the statute of wills, enacted in the reign of Henry VIII, the right to a testamentary disposition of the property did not extend to real estate at all, and as to personal estate was limited as above stated. Although these restrictions have long since been abolished in England, and never existed in this country, except in Louisiana, the right of a widow to her dower and to a share in the personal estate is ordinarily secured to her by statute.

"By the Code Napoleon, gifts of property, whether by acts *inter vivos* or by will, must not exceed one half the estate if the testator leave but one child, one third if he leaves two children; one fourth if he leaves three or more. If he have no children, but leaves ancestors, both in the paternal and maternal line, he may give away but one half of his property, and but three fourths if he have ancestors in but one line. By the law of Italy, one half a testator's property must be distributed equally among all his children; the other half he may leave to his eldest son or to whomsoever he pleases. Similar restrictions upon the power of disposition by will are found in the codes of other continental countries, as well as in the State of Louisiana. Though the general consent of the most enlightened nations has, from the earliest historical period, recognized a natural right in children to inherit the property of their parents, we know of no legal principle to prevent the legislature from taking away or limiting the right of testamentary disposition or imposing such conditions upon its exercise as it may deem conducive to public good."

Against the cases sustaining inheritance taxes and their classifications and exemptions, appellants cite *State* v. *Mann*, 76 Wisconsin, 469; *State* v. *Gorman*, 40 Minnesota, 232; *Curry* v. *Spencer*, 61 N. H. 624; *State* v. *Ferris*, 53 Ohio St. 314, and *Missouri* v. *Switzer*, lately decided.

These cases are not in all points irreconcilable with those first cited. *Curry* v. *Spencer* is extreme. It was held that an exception from an otherwise general inheritance law of legacies to husband or wife, children or grandchildren, of the person who died last seized offended the rigid uniformity of the constitution of that State and its bill of rights. The court however said, speaking by Blodgett, J.: "It is not to be questioned that the power to tax is vested in the legislature; that it is unrestricted, except when it is opposed to some provision of the Federal or state constitution, and that it extends to every trade or occupation, to every object of industry, use or enjoyment, and to every species of possession." And quoting 2 Bl. Com. 12, he further said : "Wills, therefore, testaments, and rights of inheritances and successions are all of them creatures of the civil or municipal laws, and accordingly are in all respects regulated by them."

In *State* v. *Mann* and *State* v. *Gorman*, the distinction between a tax on successions and one on property was not necessary to observe. *State* v. *Gorman*, however, may be claimed as deciding that a tax based on the value of the estates is contrary to the rule of equality; also that exemptions are. *State* v. *Ferris* and *State* v. *Switzer* do not oppose the principles upon which inheritance taxes are sustained, but only decide that the statutes passed on were repugnant to equality and uniformity of taxation as prescribed by the state constitutions. They are authority against the Illinois statute. But it is not necessary to dwell on the points of agreement of the cases. Our inquiry must be not what will satisfy the provisions of the state constitutions, but what will satisfy the rule of the Federal Constitution. The power of the States over successions may be as plenary in the abstract as appellee contends for, nevertheless it must be exerted within the limitations of that constitution. If the power of devise or of inheritance be a privilege, it must be conferred or regulated by equal laws.

This brings us, to the law in controversy. The appellant attacks both its principles and its provisions — its principles as necessarily arbitrary and its provisions as causing discriminations and creating inequality in the burdens of taxation.

Is the act open to this criticism? The clause of the Fourteenth Amendment especially invoked is that which prohibits a State denying to any citizen the equal protection of the laws. What satisfies this equality has not been and probably never can be precisely defined. Generally it has been said that it " only requires the same means and methods to be applied impartially to all the constituents of a class so that the law shall operate equally and uniformly upon all persons in similar circumstances." *Kentucky Railroad Tax cases,* 115 U. S. 321, 337. It does not prohibit legislation which is limited, either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed. *Hayes* v. *Missouri,* 120 U. S. 68. Similar citations could be multiplied. But what is the test of likeness and unlikeness of circumstances and conditions? These expressions have almost the generality of the principle they are used to expound, and yet they are definite steps to precision and usefulness of definition, when connected with the facts of the cases in which they are employed. With these for illustration it may be safely said that the rule prescribes no rigid equality and permits to the discretion and wisdom of the State a wide latitude as far as interference by this court is concerned. Nor with the impolicy of a law has it concern. Mr. Justice Field said in *Mobile County* v. *Kimball,* 102 U. S. 691, that this court is not a harbor in which can be found a refuge from ill-advised, unequal and oppressive state legislation. And he observed in another case: " It is hardly necessary to say that hardship, impolicy or injustice of state laws is not necessarily an objection to their constitutional validity."

The rule, therefore, is not a substitute for municipal law; it only prescribes that that law have the attribute of equality of operation, and equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relations. In some circumstances it may not tax A more than B, but if A be of a different trade or

profession than B, it may. And in matters not of taxation, if A be a different kind of corporation than B, it may subject A to a different rule of responsibility to servants than B, *Missouri Pacific Railway* v. *Mackey*, 127 U. S. 205, to a different measure of damages than B, *Minneapolis & St. Louis Railway* v. *Beckwith*, 129 U. S. 26, and it permits special legislation in all of its varieties. *Missouri Pacific Railway* v. *Mackey*, 127 U. S. 205 ; *Minneapolis and St. Louis Railway* v. *Herrick*, 127 U. S. 210 ; *Duncan* v. *Missouri*, 152 U. S. 377.

In other words, the State may distinguish, select and classify objects of legislation, and necessarily this power must have a wide range of discretion. It is not without limitation, of course. "Clear and hostile discriminations against particular persons and classes, especially such as are of unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition," said Mr. Justice Bradley, in *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232, 237.

And Mr. Justice Brewer, in *Gulf, Colorado & Santa Fé Railway* v. *Ellis*, 165 U. S. 150, 165, after a careful consideration of many cases, said : "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground — some difference which bears a just and proper relation to the attempted classification — and is not a mere arbitrary selection."

Two principles, therefore, must be reconciled in the Illinois inheritance law if it is to be sustained, the equality of protection of the laws guaranteed by the Fourteenth Amendment, and the power of the State to classify persons and property. The latter principle needs further consideration. What test is there of the reasonableness of a classification — of one based upon "some difference which bears a just and proper relation to the attempted classification — and is not a mere arbitrary selection?" Legislation special in character is not forbidden by it, as we have seen. Treating mechanics as a class, and

giving them a lien for the amount of their work, has been held reasonable. Charging a railroad corporation and not other corporations or persons with an attorney's fee has been held unreasonable, yet the former would seem to be as much an exclusive favor as the latter an exclusive burden.

Of taxation, and the case at bar is of taxation, Mr. Justice Bradley said in the *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232, and Mr. Chief Justice Fuller in *Giozza* v. *Tiernan*, 148 U. S. 657, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. The range of the State's power was expressed by Mr. Justice Bradley, as follows: "It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the State framing their constitution."

And so Mr. Justice Miller, speaking for the court in *Davidson* v. *New Orleans*, 96 U. S. 97, 105, said: The Federal Constitution imposes no restraints on the State in regard to unequal taxation.

The court, through Mr. Justice Lamar, in *Pacific Express Co.* v. *Seibert*, 142 U. S. 339, was equally emphatic. He said on page 351: "This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or from being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destruc-

tive of the principles of uniformity and equality in taxation and of a just adaptation of property to its burdens." And it was said in *Merchants' Bank* v. *Pennsylvania*, 167 U. S. 461 : "Indeed, this whole argument of a right under the Federal Constitution to challenge the tax law on the ground of inequality in the burdens resulting from the operation of the law is put at rest by the decision in *Bell's Gap Railroad* v. *Pennsylvania*."

There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things. Bearing these considerations in mind we can solve the questions in controversy.

There are three main classes in the Illinois statute, the first and second being based, respectively, on lineal and collateral relationship to the testator or intestate, and the third being composed of strangers to his blood and distant relatives. The latter is again divided into four subclasses dependent upon the amount of the estate received. The first two classes, therefore, depend on substantial differences, differences which may distinguish them from each other and them or either of them from the other class — differences, therefore, which "bear a just and proper relation to the attempted classification" — the rule expressed in the *Gulf, Colorado & Santa Fé Railway* v. *Ellis*, 165 U. S. 150. And if the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law operates "equally and uniformly upon all persons in similar circumstances."

But the appellant asserts discrimination, and claims that the exemptions produce the greatest inequality. As stated above, the Supreme Court of the State of Illinois passed on and sustained the law in the *Drake case*, and, claiming the opinion for support, the appellant contends that there are two distinct systems and principles applied in the act, the one basing the tax on the amount received or the value of the

privilege of succession; the other basing the tax upon the estate owned by the decedent, irrespective of the amount or value of the legacy. And discriminations hence resulting, or rather which are claimed as hence resulting, are detailed.

We, however, do not read the opinion as counsel do. In answer to the objection that the statute offended against uniformity or proportion to valuation as prescribed by the constitution of Illinois, the court said:

"That statute provides certain classes of property, which were a part of an estate, shall be exempt from taxation under these provisions; and when the legislature provides other classes of property, some of which shall pay one dollar per hundred, others two, others three and others four, and still others five, and again others six dollars per hundred, six different classes are created under and by which a tax is levied by valuation on the right of succession to a separate class of property.

"The class on which a tax is thus levied is general, uniform, and pertains to all species of property included within that class. A tax which affects the property within a specific class is uniform as to the class, and there is no provision of the constitution which precludes legislative action from assessing a tax on that particular class. By this act of the legislature six classes of property are created heretofore absolutely unknown. *It is those classes of property depending upon the estate owned by one dying possessed thereof which the State may regulate as to its descent and the right to devise.* The tax assessed on classes thus created is absolutely uniform on the classes upon which it operates, and under the provisions of the statute is to be determined by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property inherited, and is not inconsistent with the principle of taxation fixed by the constitution, and is clearly within the sections of the constitution quoted. No want of uniformity with one living who owns property can be urged as a reason why the statute makes an inconsistent rule. No person inherits property or can take by devise except by the statute; and the State, having power to regulate this ques-

tion, may create classes and provide for uniformity with reference to classes which were before unknown."

The words which we have italicized are urged to support appellant's contention, but it is manifest that they do not do so when considered in relation to that which precedes and follows them, and it is, therefore, the estates which descend or are received which the court decides are new property, and which are to pay a tax in proportion to their value.

Appellant, however, says: "The progression is likewise unnecessarily arbitrary if we take the view that the tax is levied on the amount received. . . . Under such an assumption those taking the larger amounts are required to pay a larger rate on the same sums upon which those taking smaller sums pay a smaller rate; that is to say, one who receives a legacy of $10,000 pays 3 per cent, or $300, thus receiving $9700 net, while one receiving a legacy of $10,001 pays 4 per cent on the whole amount, or $400.04, thus receiving $9600.96, $99.04 less than the one whose legacy was actually one dollar less valuable. This method is applied throughout the class. Other examples might be stated."

The reasoning of appellant is based on the view that the tax is one on property instead of one on the succession, as held by the Supreme Court of the State. Being on the succession, the court further held, as we have seen, that the latter is to be regarded as new property, and the $20,000 and other property not taxed are not, therefore, exemptions.

In this view the Illinois court is in harmony with the majority of other courts of the country. We concur in the reasoning. It is true that the amount of the exemption is greater in the Illinois law than in any other, but the right to exempt cannot depend on that. Whether it shall be $20,000 as in Illinois law or $10,000 as in that of Massachusetts, or other amounts as in other laws, must depend upon the judgment of the legislature of each State, and cannot be subject to judicial review. If such review could ascertain the factors of judgment and could apply them with indisputable wisdom to the different conditions existing, it would be outside of its province to do so. That manifestly is a legislative, not a judicial, function.

The first and second cases, therefore, of the statute depend on substantial distinctions and their classifications are not arbitrary. Nor do the exemptions of the statute render its operation unequal within the meaning of the Fourteenth Amendment. "The right to make exemptions is involved in the right to select the subjects of taxation and apportion the public burdens among them, and must consequently be understood to exist in the lawmaking power wherever it has not in terms been taken away. To some extent it must exist always, for the selection of subjects of taxation is of itself an exemption of what is not selected." Cooley on Taxation, 200. See, also, the remarks of Mr. Justice Bradley in *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232.

The provisions of the statute in regard to the tax on legacies to strangers to the blood of an intestate need further comment. These provisions are as follows:

"On each and every hundred dollars of the clear market value of all property and at the same rate for any less amount on all estates of ten thousand dollars and less, three dollars; on all estates over ten thousand dollars and not exceeding twenty thousand dollars, four dollars; on all estates over twenty thousand dollars and not exceeding fifty thousand dollars, five dollars; and on all estates over fifty thousand dollars, six dollars; Provided, that an estate in the above case which may be valued at a less sum than five hundred dollars shall not be subject to any duty or tax."

There are four classes created, and manifestly there is equality between the members of each class. Inequality is only found by comparing the members of one class with those of another. It is illustrated by appellant as follows: One who receives a legacy of $10,000 pays 3 per cent, or $300, thus receiving $9700 net; while one receiving a legacy of $10,001 pays 4 per cent on the whole amount, or $400.04, thus receiving $9600.96, or $99.04 less than the one whose legacy was actually one dollar less valuable. This method is applied throughout the class.

These, however, are conceded to be extreme illustrations, and we think, therefore, that they furnish no test of the

practical operation of the classification. When the legacies differ in substantial extent, if the rate increases the benefit increases to greater degree.

If there is unsoundness it must be in the classification. The members of each class are treated alike, that is to say, all who inherit $10,000 are treated alike — all who inherit any other sum are treated alike. There is equality therefore within the classes. If there is inequality it must be because the members of a class are arbitrarily made such and burdened as such upon no distinctions justifying it. This is claimed. It is said that the tax is not in proportion to the amount but varies with the amounts arbitrarily fixed, and hence that an inheritance of $10,000 or less pays 3 per cent, and that one over $10,000 pays not 3 per cent on $10,000 and an increased percentage on the excess over $10,000 but an increased percentage on the $10,000 as well as on the excess, and it is said, as we have seen, that in consequence one who is given a legacy of ten thousand and one dollars by the deduction of the tax receives $99.04 less than one who is given a legacy of $10,000. But neither case can be said to be contrary to the rule of equality of the Fourteenth Amendment. That rule does not require, as we have seen, exact equality of taxation. It only requires that the law imposing it shall operate on all alike under the same circumstances. The tax is not on money; it is on the right to inherit; and hence a condition of inheritance, and it may be graded according to the value of that inheritance. The condition is not arbitrary because it is determined by that value; it is not unequal in operation because it does not levy the same percentage on every dollar; does not fail to treat "all alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed." The jurisdiction of courts is fixed by amounts. The right of appeal is. As was said at bar the Congress of the United States has classified the right of suitors to come into the United States courts by amounts. Regarding these alone, there is the same inequality that is urged against classification of the Illinois law. All license laws and all specific taxes have in them an element of inequality, nevertheless

they are universally imposed and their legality has never been questioned.   We think the classification of the Illinois law was in the power of the legislature to make, and the decree of the Circuit Court is

*Affirmed.*

MR. JUSTICE BREWER dissenting.

I am unable to concur in the foregoing opinion, so far as it sustains the constitutionality of that part of the law which grades the rate of the tax upon legacies to strangers by the amount of such legacies.   If this were a question in political economy I should not dissent, but it is one of constitutional limitations.   Equality in right, in protection and in burden is the thought which has run through the life of this Nation and its constitutional enactments from the Declaration of Independence to the present hour.   Of course, absolute equality is not attainable, and the fact that a law, whether tax law or other, works inequality in its actual operation does not prove its unconstitutionality.   *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461.   But when a tax law directly, necessarily and intentionally creates an inequality of burden, it then becomes imperative to inquire whether this inequality thus intentionally created can find any constitutional justification.

That this is a law imposing taxes is not open to question. The title of the act is " An Act to Tax Gifts, Legacies, etc.," and the first section provides that "all property . . . which shall pass by will or by the intestate laws of this State . . . shall be, and is, subject to a tax at the rate hereinafter specified."   Classifying inheritors and legatees into the three classes of near relatives, remote relatives and strangers, and imposing a different rate of taxation as to each of these classes, may not be objectionable.   The classification is based upon differences which bear just and proper relation to it, and where classification is rightful, differences in the rate of taxation may be, so far as the Federal Constitution is concerned, permissible.   But beyond this classification the statute provides that as to the third class, that is, strangers, the rate of taxation shall vary with the amount of the estate.   In other

words, the actual tax to be paid does not increase simply as the legacy increases, which would be the rule of equality, but the rate of taxation is also increased as the amount of the legacy passes from one sum to another. Upon a legacy over fifty thousand dollars it is six per cent, while upon one under ten thousand dollars it is only three per cent.

It seems to be conceded that if this were a tax upon property such increase in the rate of taxation could not be sustained, but being a tax upon the succession it is held that a different rule prevails. The argument is that because the State may regulate inheritances and the extent of testamentary disposition it may impose thereon any burdens, including therein taxes, and impose them in any manner it chooses. There are doubtless some matters over which the State has purely arbitrary power. For instance, it is under no obligations to grant any charters, and the legislature may undoubtedly in giving a charter to one set of persons impose one series of burdens, and in granting a similar charter to another set may impose entirely different burdens. But these are cases of mere gratuities, mere favors and privileges, and any donor of such may add to them the burdens he pleases. But I do not understand that legacies and inheritances stand upon the same footing. True, the State may regulate, but it has no arbitrary power in the matter. The property of a decedent does not at his death become the property of the State, nor subject to its disposal according to any mere whim or fancy. And yet if it is a purely arbitrary power I do not see what constitutional objection could be raised to any disposition which a legislature might make of the property of any decedent. Take the illustration made by counsel for appellant: Could the legislature of Illinois, which passed this statute, constitutionally enact that the estate of every person dying within the limits of the State should be given to the members of that legislature? Or, if the matter of personal benefit be interposed as against the validity of such legislation, could it enact that the property of A, on his death, should pass to the State; the property of B to some religious or charitable institution; and the property of C be divided

among his children? Can there be a doubt that such inequality of legislation would vitiate it? But whatever may be the power of the legislature, Illinois had regulated the matter of descents and distributions and had granted the right of testamentary disposition. And now by this statute upon property passing in accordance with its statutes a tax is imposed; a tax unequal because not proportioned to the amount of the estate; unequal because based upon a classification purely arbitrary, to wit, that of wealth — a tax directly and intentionally made unequal. I think the Constitution of the United States forbids such inequality.