[No. 3674.    Decided July 17, 1901.]

CHERRY POINT FISH COMPANY, *Respondent,* v. E. D. NELSON *et al., Appellants.*

FISHERIES—TRAPS—DEPTH OF WATER—CONSTRUCTION OF STATUTE.

Laws 1899, p. 194, §.1, which provides that it shall be unlawful for any person to construct, operate, and maintain in any of the waters of the state, "at a greater depth than sixty-five feet at low tide," any pound net or trap for the purpose of catching salmon or other food fishes, was intended by the legislature, in view of all the provisions of the act, to prohibit the construction of such fishing appliances in waters of greater depth at low tide than sixty-five feet.

SAME—EVIDENCE OF DEPTH—GOVERNMENT TIDE TABLES.

The tide tables prepared by the United States government for the use of navigators on the waters of Puget Sound are competent evidence for the purpose of finding by their aid the depth of the water at a given time and place, under normal conditions, in order to determine whether a fish trap had been constructed in waters of greater depth than sixty-five feet at

low tide, in contravention of the act (Laws 1899, p. 194), relating to the protection and propagation of food fishes.

SAME—INJUNCTION AGAINST MAINTENANCE—SUFFICIENCY OF FIND-
    INGS.

A judgment enjoining the maintenance and operation of a fish trap by defendants is supported by a finding of the court that such trap interfered with the common right of fishery as regulated by the statutes of the state; that it is an infringement upon the location of plaintiff and materially injures and damages the plaintiff, and is, as to it, a nuisance in fact, since such finding is sufficient to show special injury, warranting plaintiff in maintaining injunction against defendants in its own name.

Appeal from Superior Court, Whatcom County.—Hon. HIRAM E. HADLEY, Judge. Affirmed.

*Newman & Howard* and *Dorr & Hadley,* for appellants.

*Kerr & McCord,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The respondent is the locator and in possession of a certain pound net fishing location situate in the waters of Puget Sound off the mainland between Cherry Point and Sandy Point, in Whatcom county, and maintains and operates thereon a pound net, for the purpose of catching salmon, under a license issued to it by the fish commissioner of the state. In 1899 the appellants procured from the fish commissioner a pound net license, and thereafter indicated a location and constructed a pound net at a place in front of, and some three thousand feet distant from, the respondent's trap. The respondent brought this action to enjoin the maintenance and operation of the trap, and to require its removal. It alleged that the trap was constructed in prohibited waters, being constructed at a place where the water was over sixty-five feet in depth at low tide, and that the trap was specially injurious to the respondent because it cut off the approach

to the respondent's trap, and caught and drove away fish which would otherwise be caught therein. Issue was taken upon the allegations of the complaint, and a trial had resulting in a judgment in accordance with the prayer of the complaint. The evidence introduced on the trial of the cause is not in the record; the appellants relying for reversal upon certain findings of fact made by the trial court. These findings are as follows:

"  .  .  .  That the construction and maintenance of said trap or pound net by defendants at the place aforesaid, is in water of a greater depth than 65 feet at low tide and is a general public nuisance and interferes not only with the common fishery rights as regulated by the laws of the state of Washington, but is especially in violation of and an infringement upon the rights of plaintiff in and to its said location and of the statutes of the state of Washington; that the location of plaintiff, after a large expenditure of money, has been demonstrated to be valuable and the maintenance of defendants' trap upon said location is an infringement upon the rights of the plaintiff and materially injures and damages plaintiff and that said location of defendants, as to this plaintiff; is a nuisance in fact."

"That the depth of water at low tide at and upon the defendants' location numbered 2321, at the points hereinafter indicated, is as follows: At the inner or shore end, 66.7 feet; at a point about 330 feet or one-fourth of the way outward therefrom, 67.4 feet; at a point 660 feet therefrom, or one-half of the way out, 68 feet; at a distance of 990 feet therefrom, or three-fourths of the way out, 68.8 feet; at the pot end of the trap, 70.5 feet; that the foregoing measurements show the depth of water at said location at low tide and that the whole of said location of defendants is in water of a greater depth than that in which trap fishing is permitted by the laws of the state of Washington, and that said trap is within waters wherein fishing with pound nets or fish traps is prohibited by the statutes of this state; that the foregoing measurements are

based upon the measurements made at various times and on various dates by competent civil engineers, who took said measurements, and were reduced according to the data contained in the tide tables prepared by the United States Coast and Geodetic Survey and issued by the government of the United States; that said measurements as made by said civil engineers were reduced according to the rules contained in said tide tables to the lowest low water for any given date in the year 1900, as shown by said tide tables; that said tide tables, under normal conditions, are accurate and correct and contain the only accurate data and information upon which the depth of water at low tide can with any degree of certainty be computed or determined; that the height of water is frequently affected by the winds; that winds from the outward will pile the water up in the Gulf of Georgia and Puget Sound generally and the wind from the shore will drive the water outward in a corresponding degree; that the winds affect the surface of the water both at high tide and at low tide to the extent of from two to four feet, depending upon the strength, continuance and velocity of the wind; that there is a difference between high water and high tide and low water and low tide, due to the action of the winds as aforesaid; that no uniform system of determining the depth of water at either low tide or high tide wherein fish traps may be maintained can be constructed or adopted, unless the United States Government Tide Tables are utilized and given credibility; that said tide tables, under all normal conditions, are accurate and correct and the depth of water must be determined therefrom by competent measurements and reduced to low tide in accordance with the data contained in said tide tables."

"That on the third day of December, 1899, the fishing location claimed by the defendant, E. D. Nelson, under pound net license No. 2321, was sounded, and the depth of water as the persons measuring it believed it to be from their measurements made at the three location piles at said location was as follows, to-wit: At the inner pile, 63 and 5-10 feet; at the middle pile, 64 and 5-10 feet, and at the outer pile, 66 feet, and said defendant believed said

measurements to be correct.   That at the time said meas-
urement was made at the said outer pile the tide had been
flooding at that point for about forty minutes and the wa-
ter had raised several inches.   That the bottom at all
points along said location is composed of extremely soft
mud, and that the measurements thus taken were from
the foot of the lead as it rested on the bottom to the sur-
face of the water at the time said measurements were
taken."

The act relating to the protection and propagation of
food fishes (Laws 1899, p. 194, § 1) makes it unlawful
for any person to construct, operate, and maintain in any
of the waters of the state, "at a greater depth than sixty-
five feet at low tide," any pound net, etc., for the purpose
of catching salmon or other food fishes.   The trial court
found, it will be noticed, that the appellants' trap is con-
structed in water of greater depth than sixty-five feet at
low tide, but did not find that the trap as constructed is in
water "at a greater depth than sixty-five feet."   The ap-
pellants contend that the finding is for this reason insuffi-
cient to support the judgment.   They argue that the stat-
ute does not prohibit the construction of a trap in waters
which are sixty-five feet or more in depth, but only pro-
hibits the construction of a trap deeper into the water
than sixty-five feet, measured from the surface at low tide;
in other words, a trap may be constructed in any depth of
water so long as it does not extend downwards from the
surface of the water at low tide a greater distance than
sixty-five feet.   While the language used in the particular
section of the act cited may lend color to the construction
put upon it by the appellants, a consideration of the sub-
ject-matter of the act, and the language used in other sec-
tions, to our minds precludes the idea that such was the
legislative meaning.   The act in question has as its prin-
cipal object the protection of food fishes.   It absolutely pro-

hibits the construction of any fixed appliance, set lines excepted, in any of the waters of Puget Sound within three miles of the mouth of any river flowing therein; clearly showing that it was the intention of the law makers to provide for an open and unobstructed passage way for the fish to enter these rivers, which are their natural spawning places. If traps are permitted to be constructed in waters of any depth, it is easy to see, notwithstanding the limitations put upon the length of the lead lines and the proximity to each other within which they may be constructed, that it would be possible to so bar these passage ways as to practically cut off the approach of the fish to the mouths of these streams. More than this, the legislature understood the method of constructing the enumerated fishing appliances. A pound net, such as the appellants constructed, must of necessity extend the entire depth of the water. It consists not only of the net in which the fish are caught, but also of a lead to guide the fish into the net. This lead may be lawfully two thousand five hundred feet in length, and is constructed by driving a series of piles into the ground under the water at from ten to thirty feet apart, securely bracing them, and stretching thereon wire or cotton webbing. While it is possible to so place the webbing as not to extend it to a greater depth in the water than sixty-five feet at low tide, it is impossible to so construct the trap as to limit the distance the piles extend into the water, and these are as much a constituent part of the trap as is the wire or cotton webbing. If it be true that the act was not framed with much regard to the niceties of the language, it is only an additional reason for not following too closely the literal meaning of the words used. In such a case the legislative will is to be ascertained, not from the literal meaning of the words of the statute alone, but from the text as a whole interpreted in view of the general object and purpose of the act.

From the findings it appears that the trial court, in determining the depth of the water, did not have before it evidence of an actual measurement made at the lowest low tide for any given year, but that such depth was determined from measurements made by competent civil engineers at various times and various stages of the tides, and reduced to lowest low tide for the year 1900 according to data and rules contained in the United States tide tables, prepared by the government for the use of navigators on the waters of Puget Sound. The appellants contend that this finding was based upon incompetent evidence, and that, as the court found that the appellants believed, from the measurement made by them, that the water was not of the prohibited depth, the judgment should have been in their favor. Passing over the question whether the appellants are entitled to have this question reviewed in this court at all, inasmuch as they have not brought the evidence before us, we cannot think these tables were incompetent as evidence, or that to find the depth of the water at a given time by their aid was, as the appellants contend, mere speculation or conjecture. The court found that the tables were correct and accurate under all normal conditions. By normal conditions the court meant those conditions prevailing when the forces which produce the tides act of and within themselves, unaffected by the direction and force of the winds. Manifestly, the words low tide, as used in the act, mean low tide under normal conditions. The legislature was laying down a rule. It intended to fix a point from which measurements could be made to ascertain the depth of the water at any given place and at any given time. It authorized the location of a fishing site, and the construction of a trap thereon, at any season of the year. It would be to convict the legislature of an absurdity to hold that the lowest low tide

could not be determined by measurements made at any stage of the water and reduced to low tide by the rules laid down by the recognized standards, or to say that the act referred to other than normal conditions. In these waters, the lowest tide for any given year occurs but once, and, if the courts are to be confined to actual measurements made at such a time, when the question of the depth of the water is before them for determination, the act is practically nullified in its operation.

Lastly, it is contended that the finding of the trial court on the question of special injury to the respondent is insufficient to support the judgment. The court found that the appellants' trap interfered with the common right of fishery as regulated by the statutes of the state; that it is an infringement upon the location of respondent, and materially injures and damages the respondent; and that the trap, as to the respondent, is a nuisance in fact. Whether the evidence justified these findings is a question not before us. In themselves they justify the conclusion that the trap is a public nuisance; that the respondent suffers, because thereof, special, actual, and material damages, differing in kind from that suffered by the general public. This is sufficient to enable it to maintain injunction against the appellants in its own name, and justifies the judgment rendered.

The judgment is affirmed.

REAVIS, C. J., and ANDERS and MOUNT, JJ., concur.