[No. 31668. *En Banc.* June 26, 1952.]

MARIE CLOTHILDE GUINNESS *et al., Respondents,* v. THE STATE OF WASHINGTON *et al., Appellants.*[1]

[1] Reported in 246 P. (2d) 433.

*The Attorney General* and *William C. Klein, Assistant,* for appellants.

*G. H. Bucey* (of *Summers, Bucey & Howard*), for respondents.

FINLEY, J.—Arthur Ernest Guinness, a nonresident of our country, domiciled in Great Britain, died there on March 22, 1949. He owned the luxury yacht "Fantome." At the time of his death, it was moored at Seattle, Washington, where it had been left continuously for a number of years. By his will, probated in Great Britain, the yacht passed to respondents, as trustees for the benefit of (1) the wife, (2) the children of Mr. Guinness, and (3) certain other persons. The state of Washington asserted and is pressing a claim for the collection of inheritance tax relative to the yacht.

The yacht, as mentioned above, for several years has been and is now located within the jurisdiction of the state of Washington. The tax claim is based upon the succession or passing of ownership of the yacht from the deceased to the trustees under the aforementioned will and an interpretation by our inheritance tax division of Rem. Supp. 1945, § 11201, which, in part, reads as follows:

"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state . . . shall, for the use of the state, be subject to a tax . . ."

It is respondents' position that the statute should not be interpreted and applied to impose an inheritance tax upon the particular devolution of ownership of the yacht "Fantome." It is pointed out that the ownership change resulted from a will (a) executed and (b) probated in Great Britain. Respondents contend that our legislature used the language, "which shall pass by will or by the statutes of inheritance of this or any other state," as a restriction or phrase of limitation respecting the scope of application of the Washington inheritance tax. Their reasoning is that the word *state* was not used in its generic or broader sense in the above quotation from Rem. Supp. 1945, § 11201; that the term *state*, as there used, referred to and included only the states of this country, and did not mean a country or nation such as Great Britain. Therefore, the final result of respondents' contentions, and their interpretation of the Washington statute, could be spelled out about as follows: Property located in the state of Washington and passing by (1) a will or (2) the statutes of inheritance of Great Britain (that country not being a *state* in the narrower sense), would not be subject to the state of Washington inheritance tax.

We do not agree with respondents' contentions. Their formulation focuses attention too closely upon the phrase, "of this or any other state," and places too much emphasis upon the word *state* and a narrow definition of it, resulting in restrictive application of Rem. Supp. 1945, § 11201. This disregards other language and portions of the statute, and is contrary to the sound and practical principle of statutory interpretation that legislative intent, will, or purpose, is to be ascertained from the statutory text as a whole, interpreted in terms of the general object and purpose of the act. *Cherry Point Fish Co. v. Nelson*, 25 Wash. 558, 66 Pac. 55; *In re Horse Heaven Irrigation Dist.*, 11 Wn. (2d) 218, 118 P. (2d) 972; *Cory v. Nethery*, 19 Wn. (2d) 326, 142 P. (2d) 488.

It is our view that the term *state*, as used in the statute, must be given a broader interpretation than that contended for by the respondents. The statute should be

read in its entirety. But even when taken piecemeal, the language is broad and inclusive in scope. The draftsmen of the statute used the phrase, "all property within the jurisdiction of this state and any interest therein." This phraseology is broad, far-reaching, and all-inclusive. It is followed by equally broad and inclusive language to the effect that property will be subject to the tax, "whether belonging to the inhabitants of this state or not, and whether tangible or intangible."

In using the crucial phrase, "which shall pass by will or by the statutes of inheritance," the legislators may well have had the thought in mind and were only trying to say that, *upon the death of the owner,* when a change of ownership is effected thereby, property located within the jurisdiction of the state of Washington shall be subject to an inheritance tax in this state. Logically, the choice of the language actually used could have been influenced by the fact that upon the death of an owner his property would pass in one of two ways—either (a) by will or (b) by the laws of inheritance of some sovereignty. Thus, the legislation merely mentioned the two ways in which property of a deceased passes, with no other significance intended.

It is consistent with the general meaning of the statute that the crucial phrase means that, *upon the death of the owner* thereof, *all property, located within the jurisdiction of this state,* passing by will or by the laws of inheritance of *any sovereignty,* shall be subject to Washington state inheritance tax.

 The basic question in this appeal is whether the state of Washington has the power to impose the inheritance tax herein involved. Literally, an overwhelming weight of authority sustains and upholds the power of the state to impose such succession taxes. *Eidman v. Martinez,* 184 U. S. 578, 46 L. Ed. 697, 22 S. Ct. 515.

In considering the problem here involved, a superficially apparent, seemingly significant, practical obstacle, or a reluctance to validate the tax, may arise, if one seeks a moral justification for the tax, by way of some tangible act occur-

ring in this state and beneficially affecting the yacht, the interests of the transferees therein, or the transfer of ownership thereof. The tangible property is located in the state of Washington, but the testator died in England. His will was made and probated in England. Succession, or change in ownership, seems to have resulted because of things or events which happened, at least apparently, outside the state of Washington. One persuasive and satisfactory answer to any practical problem or reluctance respecting validation of the tax is the fact that ownership or possession of the yacht, now located in this state, is effectuated by the law of this jurisdiction and the enforcement of such law by our courts and administrative or police officers. Rem. Rev. Stat., § 1392 [P.P.C. § 220-1], and Rem. Rev. Stat., § 1393 [P.P.C. § 220-3], provide for ancillary proceedings in this state respecting a foreign will; and, under *Rabar v. Stubblefield,* 43 Wash. 334, 86 Pac. 560, and *In re Lyons' Estate,* 175 Wash. 115, 26 P. (2d) 615, property in this state of a nonresident testator is distributed according to the laws of the domicile of the deceased. If a stranger or interloper should seize the yacht, or claim some right or interest in it in opposition to the heir's rights to ownership and possession, the matter would be settled in the courts of this state. The case at bar is a good example. It is true that our courts would refer to the laws of England in resolving or determining questions respecting ownership—but the determination of such questions would be made by our courts, and they and our police officers would thereupon enforce and protect the ownership rights of the heirs.

In *Callahan v. Woodbridge,* 171 Mass. 595, 597, 51 N. E. 176, the court resolved any practical problem or reluctance about validating the inheritance tax there involved by emphasizing a Massachusetts statute regulating the succession to property of a nonresident in accordance with the laws of the foreign domicile in which the testator died and his will was initially probated. The Massachusetts court said:

"In the statute before us the succession to property of non-residents is expressly taxed as if the property belonged to inhabitants of the Commonwealth. The language 'which

shall pass by will or by the laws of the Commonwealth regulating intestate succession,' taken in connection with the clauses immediately preceding it, applies to foreign wills, and to property that passes under the statute of this Commonwealth which regulates the succession to the property of a non-resident owner after his death, and declares that it shall be 'disposed of according to the laws of the State or country of which he was an inhabitant.' Pub. Sts. c. 138, § 1."

In Washington state, as mentioned heretofore, we have Rem. Rev. Stat., § 1392, which reads:

"Wills probated in any other state or territory of the United States, or in any foreign country or state, shall be admitted to probate in this state on the production of a copy of such will and of the original record of probate thereof, authenticated by the attestation of the clerk of the court in which such probation was made; or if there be no clerk, by the attestation of the judge thereof, and by the seal of such officers, if they have a seal."

and Rem. Rev. Stat., § 1393, which reads:

"All provisions of law relating to the carrying into effect of domestic wills after probate thereof shall, so far as applicable, apply to foreign wills admitted to probate in this state."

Under our decision in *Rader v. Stubblefield, supra,* the property in this state of a deceased nonresident testator is distributed according to the laws of his domicile. Thus, under our above-mentioned statutes and case law, the end results reached in our state are the same as those reached under the Massachusetts statute, emphasized by the court in *Callahan v. Woodbridge, supra.*

Inheritance taxation involving facts and circumstances similar or identical to those respecting the "Fantome" has been upheld in numerous states of this country. The power of a state to tax under such circumstances cannot now be seriously questioned. In *Callahan v. Woodbridge, supra,* at page 597, the court said:

"The constitutional authority of the Legislature to lay an excise tax upon the privilege of succession to property after the death of the former owner of it was established by this

court in *Minot v. Winthrop,* 162 Mass. 113, and is generally recognized by courts elsewhere. *Attorney General v. Bouwens,* 4 M. & W. 171. *Stern v. The Queen,* [1896] 1 Q. B. 211. *Thomson v. Advocate General,* 12 Cl. & F. 1. *State v. Dalrymple,* 70 Md. 294. *In re Romaine,* 127 N. Y. 80. *In re Swift,* 137 N. Y. 77, 84. *Orcutt's appeal,* 97 Penn. St. 179. *Small's estate,* 151 Penn. St. 1. *Alvany v. Powell,* 2 Jones Eq. 51. The legal right of the Legislature to make such a provision in regard to the property of a non-resident owner rests upon the fact that the property is within the State and subject to its jurisdiction. *This power is as large in reference to the property of a non-resident decedent as in reference to that of the inhabitants of the Commonwealth.* It covers the property within the jurisdiction. A ground for its exercise is that the property has the protection of our laws, and that our laws are invoked for the administration of it when a change of ownership is to be effected." (Italics ours.)

The respondents do not take the position that the state of Washington *lacks the power to impose a succession tax* where the circumstances are comparable to those respecting the "Fantome." However, aside from this particular point, the respondents do rely very strongly upon *Eidman v. Martinez, supra,* as authority to defeat the tax in the instant case. On the narrow issue of the power of the state to impose a succession tax, the United States supreme court in the *Martinez* case, said at p. 582:

"Recent cases in this court have affirmed very broadly the right of the legislature to tax the local property of non-residents, and particularly of corporations who are permitted by comity to do business within the State. *The Delaware Railroad Tax,* 18 Wall. 206; *Erie Railway Co. v. Pennsylvania,* 21 Wall. 492; *Western Union Tel. Co. v. Massachusetts,* 125 U. S. 530; *Marye v. Baltimore & Ohio Railroad,* 127 U. S. 117; *Pullman's Palace Car Co. v. Pennsylvania,* 141 U. S. 18; *Adams Express Co. v. Ohio,* 166 U. S. 185. The same principle has been applied not only to tangible property but to credits and effects. *Tappan v. Merchants' National Bank,* 19 Wall. 490; *Savings Society v. Multnomah County,* 169 U. S. 421; *New Orleans v. Stempel,* 175 U. S. 309; *Bristol v. Washington County,* 177 U. S. 133.

"The question in each case is not of the power of the legislature to tax the personal property of non-residents, both

tangible and intangible, since that is well established both in England and America, *Mager v. Grima,* 8 How. 490, *but of its intent to do so by the particular act in question.*" (Italics ours.)

■ If only fair emphasis is given to the first portion of Rem. Supp. 1945, § 11201, a clear intention to tax successions, such as the "Fantome," seems to us to be inescapable. "All property within the jurisdiction of" the state of Washington "and any interest therein, whether belonging to the inhabitants" of the state of Washington or not, and whether tangible or intangible, is subjected by the statute to payment of an inheritance tax upon the death of the owner. There is no lack of certainty in this language. We can find no ambiguity in it. The phrase, "which shall pass by will or by the statutes of inheritance of this or any other state," may, through a highly technical interpretation, be given some significance as a restriction on the power of the state of Washington to tax only those successions to ownership which occur directly as a result of (a) will probate proceedings or (b) intestacy laws of *one of the states* of the United States. Such a technical interpretation requires a restricted, narrow definition and application of the term *state,* consistent only with colloquial use and meaning. This is at variance with the general meaning and acceptance of the term.

In Webster's International Dictionary (2d ed.) [1935], the term *state* is defined as follows:

"A political body, or body politic; any body of people occupying a definite territory and politically organized under one government, esp. one that is a sovereign, or not subject to external control . . . cf. commonwealth, nation."

In the Merriam-Webster, Webster's New International Dictionary (Unabridged) (2d ed.) [1949], the term *state* is defined as:

"Any body or persons constituting a special class or body in a community or state; a form of government; esp. a government not monarchic, as a republic; a political body, or body politic; any body of people occupying a definite terri-

tory and politically organized under one government, esp. one that is a sovereign or not subject to external control; the entity collectively constituted by the body politic, territory and government of a state (used without the article)."

In the case at bar, respondents mention the principle of statutory interpretation to the effect that an ambiguous tax statute should be construed strictly against the state and in favor of the taxpayer. But before applying the rule of strict construction, acceptable methodology in statutory interpretation seems to require that it must be (a) automatically assumed or (b) proved that the statute in question is ambiguous or that its meaning is doubtful. We are quite unwilling either to assume ambiguity or to admit or concede it has been or can be convincingly proved respecting Rem. Supp. 1945, § 11201; and, consequently, we can see no basis nor justification for application of the rule that this statute must be strictly construed against the state of Washington.

In the instant case, as pointed out above, respondents strongly rely upon *Eidman v. Martinez, supra,* to invalidate the inheritance tax claim of the state regarding the "Fantome." At best, that case is authority by analogy only. Analysis of it indicates its inherent weaknesses as a precedent here, distinguishes it from the instant case, and shows it not to be persuasive authority for either (a) restricting the intentions of the legislature, or (b) the power of the state to collect inheritance tax in the present case. In the first place, the *Martinez* case involves a Federal statute, and it is substantially different from Rem. Supp. 1945, § 11201. The Federal statute employs the phrase, "passing by will or by the intestate laws of any state or territory." The use of the term *territory* jointly with the term *state* strongly implies colloquial or limited meaning for the term *state; i.e.,* a state of the United States. In the *Martinez* case, the court emphasized the use of the phrase, "state or territory," and gave to it a limited or colloquial definition—a state or a territory of the United States. Such an interpretation appears to have been quite logical in the *Martinez* case. There, a broader definition of the term *state,*

as meaning "nation or country," would have been difficult if not impossible. However, in Rem. Supp. 1945, § 11201, the word *territory* is not used in juxtaposition with the word *state*. In fact, the word *territory* is not used at all.

While the court, in the *Martinez* case, relied upon its interpretation of the phrase, *"state or territory,"* even stronger reliance seems to have been placed upon other language of the Federal statute. At page 590 of the opinion in that case, the court said:

"The *whole scheme of the act* evidently contemplates the application of the tax only to the property of a person domiciled in a State or Territory of the United States whose property is transmitted under our laws. *This is evident not only* from the language of section 29, above quoted, but from the provision of section 30, 'that every executor, etc., . . . shall pay to the *collector or deputy collector of the district of which the deceased person was a resident* the amount of the duty or tax assessed upon such legacy or distributive share,' etc. *It would be difficult to find language more expressive of an intent to confine the tax to persons domiciled in this country."* (Italics ours.)

Thus, in *Martinez,* significant if not controlling emphasis is placed upon the above-quoted language regarding payment of the tax to the collector of the district where the deceased had resided, and indicates that property of a deceased who was domiciled outside the United States (not in a state of the United States) would not be taxed. This important factor in the *Martinez* case is entirely absent in the case at bar. Accordingly, the applicability of *Martinez* to the instant case should be emphatically if not entirely discounted. Further analysis shows that in the *Martinez* case the court cited *Callahan v. Woodbridge, supra,* as a case involving a type of statute under which property in a state of the United States of a nonresident deceased would be taxable. In the *Callahan* case, the Massachusetts inheritance tax statute—the significant portions of which are almost word for word the same as our Washington statute —read, in part, as follows:

" '*All property within the jurisdiction of the Commonwealth, and any interest therein, whether belonging to in-*

*habitants of the Commonwealth or not,* and *whether tangible or intangible, which shall pass by will or by the laws of the Commonwealth regulating intestate succession* . . . to any person, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, lineal descendant, brother, sister, adopted child, the lineal descendant of any adopted child, the wife or widow of a son, or the husband of a daughter of a decedent, . . . *shall be subject to a tax* of five per centum of its value for the use of the Commonwealth.' " (Italics ours.)

At page 591 in the *Martinez* case, the court said:

"If, as in several of the States, the words 'passing by will or by the intestate laws of this State,' or similar words, *are connected with words declaring that the tax was intended to be imposed upon the estates of persons domiciled abroad,* the latter provision is held to apply, and the words 'passing by will or the intestate laws of this State' are held to include the estates of persons domiciled abroad. Such is the case in Illinois: *Billings v. People of Illinois,* 189 Ill. 472; Massachusetts: *Callahan v. Woodbridge,* 171 Mass. 595; *Greves v. Shaw,* 173 Mass. 205; Maine: *State v. Hamlin,* 86 Me. 495; Ohio: Laws of 1894, p. 166; Connecticut: Laws of 1889, p. 106; Tennessee: *State v. Alston,* 95 Tenn. 674." (Italics ours.)

The Washington statute imposes the tax on all property "whether belonging to the inhabitants of this state or not." In meaning, this language is identical to the phraseology declaring that an inheritance tax was intended to be "imposed upon the estates of persons domiciled abroad," as emphasized in *Eidman v. Martinez, supra,* where it was suggested that such language negatived the significance of domicile. Thus, the language of the Washington statute meets the test, established by the court in the *Martinez* case, whereby property within the state, of persons domiciled abroad, passing under the laws of a foreign country, is subjected to inheritance taxation. The emphasis in Rem. Supp. 1945, § 11201, is upon *situs* and not upon domicile. Logically, with the emphasis upon *situs,* the tax should be valid, irrespective of the domicile of the decedent and irrespective of the place where a will is made or initially probated.

The respondents in the case at bar argue or emphasize the theory that the phrase, "of this or any other state," as used in Rem. Supp. 1945, § 11201, applies restrictively respecting successions, whether (1) by will, or (2) by intestate laws. This is not necessarily so. Even assuming that the phrase "of this or any other state," is to be strictly construed and is a phrase of limitation (meaning a state of the United States), if we advert to the basic proposition that the state has the power to tax, and that the only question under the statute is whether the state has actually imposed an inheritance tax to cover the "Fantome" succession, it can be said that the state would have the power to impose an inheritance tax upon successions under wills without imposing any tax as to successions under intestate laws. In other words, if the phrase, "of this or any other state," is a phrase of limitation, it would not necessarily follow that, because it applies to intestacy laws, it would also apply to wills. Grammatical construction and language meaning is against this theory or logic urged by the respondents in the case at bar. It is understandable to refer to intestacy laws of "this or any other state"; it is not understandable to refer to a will "of this or any other state." The latter phraseology seems grammatically inconsistent and illogical. What is meant by the phrase, "a will of this or any other state"? Does it mean a will drafted, executed, left in a safe deposit box, or probated in a particular state? What could it possibly mean if a will was drafted by an attorney in one state or country, was executed by the testator in a different state or country, was left in a safe deposit box in still another state or country, and finally, was probated in another entirely different state or country? It is our opinion that the phrase is not one of limitation; that the term *state,* as used in the Washington statute, means a *nation* or *sovereignty.* If it is to be interpreted restrictively, then it is not illogical to apply it to the words, "statutes of inheritance," and to refrain from applying or having it modify the term "will."

In 1935, the legislature enacted Laws of 1935, chapter 180, § 107(p), p. 778. The section has been re-enacted

and continues in effect today as Rem. Rev. Stat. (Sup.), § 11202-1p [P.P.C. § 974-117]. It reads as follows:

"It is further provided, that there shall be no exemption allowed where the decedent was not a resident of a territory or state of the United States, and the property of such decedent shall be taxable whether same is tangible or intangible property, including certificates of stock, bonds, bill, notes, bank deposits, and other written evidences of intangible property which are physically situated within the State of Washington, or where the domicile of the debtor is in the State of Washington."

This enactment relates to exemptions which shall be credited or deducted before the pertinent inheritance tax rates or schedules are applied. The purpose of Rem. Rev. Stat. (Sup.), § 11202-1p, was to cancel the usual exemptions "where the decedent was not a resident of a territory or state of the United States." The provision must have been enacted on the assumption by the legislature that property in the state of Washington of a deceased person, "not a resident of a territory or state of the United States" (a person domiciled abroad) theretofore, was in fact subject to Washington state inheritance taxation. Obviously, if successions to property of persons domiciled abroad were not taxable, the exemptions would be inapplicable in any event and the enactment of Rem. Rev. Stat. (Sup.), § 11202-1p, canceling exemptions as to persons domiciled abroad, would have been a completely pointless and useless act on the part of the legislature. The logical deduction from the fact of the enactment of § 11202-1p, *supra*, supports the validity of the tax regarding the "Fantome." This is true, unless we wish to ignore substantially the well-established principle of statutory interpretation—that the courts will presume the legislature does not indulge in vain and useless acts and that some significant purpose or object is implicit in every legislative enactment. The only practicable explanation of § 11202-1p, *supra*, is that the legislature theretofore intended to tax, thought and assumed that successions such as the one involving the yacht "Fantome" were taxable under Rem. Supp. 1945, § 11201. Here, inciden-

tally, we have a specific example of authoritative action, or interpretation, of Rem. Supp. 1945, § 11201, by the legislature itself. The point seems worthy of mention.

In view of the clear-cut intent to tax, and the legislature's own interpretation of Rem. Supp. 1945, § 11201 (or previous enactments thereof), implicit in the enactment of Rem. Rev. Stat. (Sup.), § 11202-1p, it is not for us to quibble with words or to take the position, urged by respondents, that different language might better have been used by the legislature in enacting or re-enacting Rem. Supp. 1945, § 11201.

█ Where the intent of the legislature is clear, we are governed by it, despite the fact that, as draftsmen, we might have used or preferred a somewhat different choice of language than that employed by the legislature. The fact that Rem. Supp. 1945, § 11201, was re-enacted several times, without change, and that the legislature had several opportunities to revise it, is of little significance. If the intent to tax property located in this state of persons domiciled abroad was clear, and the meaning of the statute did not seem doubtful to the legislature (and that is apparent from the enactment of § 11202-1p, *supra*), it follows there was no reason to change the wording of the statute, although it was in fact re-enacted several times.

The yacht "Fantome" is now and has been located within the jurisdiction of the state of Washington for approximately ten years. The yacht, or its former owner Mr. Guinness (testator deceased), and the present heirs have received the benefits or security inhering from the established government, the laws, courts, and law enforcement agencies of this state. The particular succession from Mr. Guinness to the heirs is effectuated by the statutes and case law of this state as elaborated upon heretofore, and the succession or change of ownership is enforcible thereunder.

Succession taxes, comparable if not identical to the one in the instant case, have been sustained in numerous other states. The state of Washington unquestionably has the power to impose the tax here involved. In enacting Rem. Supp. 1945, § 11201, the legislature of this state clearly in-

tended to impose a tax upon a succession factually the same as the one involving the yacht "Fantome." We can see no reason nor justification for thwarting the efforts of the state of Washington to enforce and collect the tax on the yacht "Fantome" succession.

On the basis of the foregoing, the judgment of the trial court is reversed.

MALLERY, HAMLEY, WEAVER, and OLSON, JJ., concur.

DONWORTH, J. (dissenting)—The majority, in my opinion, has speculated as to what it believes the legislature was "trying to say" (but did not say) in Rem. Supp. 1945, § 11201, instead of applying to the words actually used therein the meaning which the context indicates that the legislature intended.

The majority also says that it finds no ambiguity in § 11201. It seems to me that the discussion accorded by the majority to the meaning of the words "which shall pass by will or by the statutes of inheritance of this or any other state" is an implicit recognition of an ambiguity therein. The position of the majority in holding that there is no ambiguity in § 11201, and that there is therefore no need to interpret the statute strictly, seems to be achieved by ignoring or reading out of the statute the words "of this or any other state."

In interpreting this section, two cardinal principles of statutory interpretation relating to taxing acts must be kept in mind:

First, as stated in *In re Knight's Estate*, 31 Wn. (2d) 813, 199 P. (2d) 89:

"An inheritance tax, like any other tax, is a legal imposition exclusively of statutory origin, and, consequently, *any liability for payment thereof must be found in the statute, or else it does not exist.*" (Italics mine.)

Second, in *Pacific First Federal Sav. & Loan Ass'n v. Pierce County*, 27 Wn. (2d) 347, 178 P. (2d) 351, we said:

"It is the law of this state that, in case of doubt, taxing statutes are construed in favor of the taxpayer and against the taxing power. *Union Trust Co. v. Spokane County*, 145

Wash. 193, 259 Pac. 9; *Denny v. Wooster,* 175 Wash. 272, 27 P. (2d) 328; and *State ex rel. Tacoma School Dist. v. Kelly,* 176 Wash. 689, 30 P. (2d) 638."

With these rules as guides, I turn to a consideration of the wording of § 11201, *supra:*

"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state . . . shall, for the use of the state, be subject to a tax. . . ."

The majority holds that this language indicates an intention on the part of the legislature to tax all property passing by will "whether belonging to the inhabitants of this state or not." It is also held that, since title to the "Fantome" passed by a will, the words "or by the statutes of inheritance of this or any other state" may be disregarded.

The majority cites in support of its interpretation the decision of the United States supreme court in *Eidman v. Martinez,* 184 U. S. 578, 46 L. Ed. 697, 22 S. Ct. 515, where similar language in a Federal inheritance tax act was interpreted as applying both to property passing by will and property passing by intestacy statutes. As I read that decision, it supports the opposite conclusion.

The precise language of the statute then before the court was:

"Any person or persons having in charge or trust, as administrators, executors or trustees, any legacies or distributive shares arising from personal property . . . passing . . . from any person possessed of such property, either *by will or by the intestate laws of any State or Territory,* shall be, and hereby are, made subject to a duty or tax, . . ."

In holding that the Federal statute was applicable whether the decedent left a will or died intestate, the court said:

"The question involved in this case, however, arose under the act of June 30, 1864, before Mr. Justice Gray of this court, while holding the Circuit Court for Massachusetts, in

*United States v. Hunnewell,* 13 Fed. Rep. 617. Section 124 of that act imposed a duty on legacies or distributive shares arising from personal property passing from any person possessed of such property, either by will, or by the intestate laws of any State or Territory. The action was brought to recover the tax upon American securities bequeathed by a French citizen domiciled in France to a son, who was also domiciled there. The will was executed in conformity with the French law and was duly proved there, though a local executor was appointed by the probate court in Boston to transfer to the legatee the securities in question. It was held that section 124 did not make the duty payable when the person possessed of such property died testate if it would not be payable if such person died intestate; and as if the deceased had died intestate her son would not have taken a distributive share by the intestate laws of any State or Territory, his rights were the same if he took by will. In other words, that the words 'either by will or by the intestate laws of any State or Territory' must be construed together, and would apply only to wills executed within any State or Territory of the United States. The case is precisely in point."

The majority in interpreting the portion of Rem. Supp. 1945, § 11201, above quoted, holds that it should be read as though there were a comma after the word "will." I am, however, persuaded by the logic of the *Eidman* case, *supra,* that the phrase in the statute "which shall pass by will or by the statutes of inheritance of this or any other state" does not permit of such interpretation, and that no distinction can be made between cases where property passes by will and where it passes by the statutes of intestacy.

To interpret the phrase otherwise would result in an inconsistency. In view of my conclusion as to the meaning of the words "of this or any other state" (hereinafter expressed), if the majority's interpretation of the preceding language be correct, the result is that tangible personal property of a foreign decedent located within this state would be subject to liability for inheritance tax if it passed by will, but there would be no such liability if it passed by statutes of inheritance. It is not reasonable to presume that the legislature intended such an arbitrary and in-

equitable distinction. The words "of this or any other state" must therefore relate to and modify both "will" and "statutes of inheritance."

I next consider the meaning of the words "of this or any other state" as used in Rem. Supp. 1945, § 11201. The majority holds that the words "any other state" include not only other states of the United States, but also foreign nations. This conclusion is reached by emphasizing certain words in the statute and ignoring others of equal importance. Referring to the "crucial phrase," to wit, "which shall pass by will or by the statutes of inheritance," and without any consideration given to the meaning of the words "of this or any other state," the majority says:

"It is consistent with the general meaning of the statute that the crucial phrase means that, *upon the, death of the owner* thereof, *all property, located within the jurisdiction of this state,* passing by will or by the laws of inheritance of *any sovereignty,* shall be subject to Washington state inheritance tax." (Italics by the court.)

Thus is achieved, as a *fait accompli,* without due consideration having been given to the context, an interpretation of the words "of this or any other state." In my opinion, the quoted language begs the question as to the meaning of the entire phrase "which shall pass by will or by the statutes of inheritance of this or any other state."

*Callahan v. Woodbridge,* 171 Mass. 595, 51 N. E. 176 (relied upon by the majority), arose out of an ancillary probate proceeding had in Massachusetts upon the estate of a deceased resident of New York. The Massachusetts statute, under which the ancillary administration was instituted, provided:

"When administration is taken in this commonwealth on the estate of a person who was an inhabitant *of any other state or country,* his estate found here shall, after payment of his debts, be disposed of according to his last will, if he left any duly executed according to law; otherwise his real estate shall descend according to the laws of this commonwealth, and his personal estate shall be distributed and disposed of according to the laws of the state or country of

which he was an inhabitant." Pub. Stats., c. 138, § 1. (Italics mine.)

The jurisdiction of the courts of this state has not been invoked by respondents in an ancillary administration proceeding here upon the only asset of the Guinness estate located in this state.

The Massachusetts taxing act was upon "property . . . which shall pass by will or by the laws of the Commonwealth regulating intestate succession." The Massachusetts court held that this language was broad enough to authorize a tax upon the transfer of local assets owned by a deceased resident of New York whose estate was being ancillarily administered in Massachusetts.

We have in this state no act comparable to the above-quoted Massachusetts statute regulating the descent or distribution of property of nonresidents, nor is the wording of the Massachusetts taxing act sufficiently similar to the inheritance tax act now before the court to warrant acceptance of the *Callahan* case as authority for the majority decision that the transfer of title to the "Fantome" is subject to the Washington inheritance tax act.

The majority refers to appellant's argument to the effect that Rem. Rev. Stat. (Sup.), § 11202-1p [P.P.C. § 974-117], evidences an intention by the legislature to tax, in § 11201, *supra*, the estates of nonresidents of the United States.

Section 11202-1p, *supra*, reads as follows:

"It is further provided, that there shall be no exemption allowed where the decedent was not *a resident of a territory or state of the United States*, and the property of such decedent shall be taxable whether same is tangible or intangible property, including certificates of stock, bonds, bill, notes, bank deposits, and other written evidences of intangible property which are physically situated within the State of Washington, or where the domicile of the debtor is in the State of Washington." (Italics mine.)

This provision is part of a long section, the introductory part of which reads:

"An inheritance tax shall be imposed on all estates sub-

ject to this act and other inheritance tax acts of the State of Washington, at the following rates: . . ."

The "estates subject to this act" are described in § 11201. The function of § 11202-1p is to establish the *rates* of taxation for estates to which the inheritance tax act applies. The latter section does not purport to amend the former; they were both included in chapter 180, Laws of 1935.

Subsequent to the enactment of this section (§ 11202-1p) in 1935, the legislature has re-enacted § 11201 twice without any change in the wording with which we are here concerned. In fact, the same language "of this or any other state" appeared in the original inheritance tax act in 1901 and § 11201 (in which it is found) has been re-enacted six times without any change so far as concerns the quoted phrase. See chapter 217, p. 499, Laws of 1907; chapter 146, p. 593, Laws of 1917; chapter 180, p. 706, Laws of 1935; chapter 106, p. 420, Laws of 1937; chapter 184, p. 534, Laws of 1945; and chapter 218, p. 710, Laws of 1949 (which became effective subsequent to the testator's death).

If, as appellant contends, § 11202-1p was intended to change the meaning of § 11201, the legislature would not have re-enacted it three times since 1935 without changing the language now under consideration. The tax was levied by § 11201 (not by § 11202-1p), and the language with which we are here concerned has not been changed by the legislature in fifty years since its original enactment.

Where the same word or phrase is used more than once in the same statute relating to the same subject matter, it is ordinarily presumed that the legislature intended that it be given the same meaning throughout unless the context requires that it be given a different meaning in different parts of the statute.

This rule was recently applied by the supreme court of Ohio in construing the workmen's compensation act. In *State ex rel. Bohan v. Industrial Commission*, 146 Ohio St. 618, 67 N. E. (2d) 536, it was said:

"It is a well-recognized rule of statutory construction that where the same word or phrase is used more than once

in a statute, in relation to the same subject and the same purpose, if it is clear in one connection and doubtful or obscure in another, it will have the same construction in the latter as in the former, unless a different construction is plainly called for. *Rhodes v. Weldy,* 46 Ohio St., 234, 20 N. E. 461; *Chilcote, Gdn., v. Hoffman,* 97 Ohio St., 98, 119 N. E. 364."

See, also, *State ex rel. Gary Taxpayers' Ass'n v. Lake Superior Court,* 225 Ind. 478, 76 N. E. (2d) 254.

In Rem. Supp. 1945, § 11201, the legislature used the words "this state" twice *before* using the phrase "of this or any other state." In each instance "this state" obviously refers to the state of Washington. I find nothing in the context to support the holding that the words "of this or any other state" were intended to refer to any sovereignty except the state of Washington or a similar state, to wit, one of the United States.

The well-recognized *ejusdem generis* rule of statutory construction is that where general words follow the designation of particular things, or classes of persons or subjects, the general words will usually be construed to include only those persons or things of the same class or general nature as those specifically enumerated. Crawford, Statutory Construction (1940 ed.), 326, § 191. Courts have frequently applied this rule where the word "other" has been preceded not by a list of several things, but by a single word, and where the context of the statute called for application of the principle embodied in the rule. *Lorenz v. Campbell,* 110 Vt. 200, 3 A. (2d) 548; *Crystal Spring Distillery Co. v. Cox,* 49 Fed. 555; *State Sav. Loan & Trust Co. v. Swimmer,* 208 Mo. App. 503, 236 S. W. 1057; *Ex parte Van Winkle,* 3 N. J. 348, 70 A. (2d) 167; *State ex rel. Churchill v. Hay,* 45 Neb. 321, 63 N. W. 821.

In my opinion, the context of § 11201 clearly calls for application of the rule of *ejusdem generis,* and the words "of this or any other state" bear the logical interpretation "of this state of Washington or any similar state." Only states of the United States can be fairly held to be similar to the state of Washington.

If the legislature, in enacting the statute before us, had intended to include within its scope a foreign nation (such as Great Britain, for example), it could have easily employed language which would have plainly included a class of states *different* from the state of Washington. The wording used in the original and six later enactments of § 11201 must be held to include only a state *similar* to the state of Washington.

My conclusion is supported by the decision of the United States supreme court in *Eidman v. Martinez, supra,* wherein that court, in referring to certain state statutes which contained similar wording but did include a specific reference to the property of deceased nonresident aliens, said:

"If, as in several of the States, the words 'passing by will or by the intestate laws of this State,' or similar words, *are connected with words declaring that the tax was intended to be imposed upon the estates of persons domiciled abroad,* the latter provision is held to apply, and the words 'passing by will or the intestate laws of this State' are held to include the estates of persons domiciled abroad. Such is the case in Illinois: *Billings v. People of Illinois,* 189 Ill. 472; Massachusetts: *Callahan v. Woodbridge,* 171 Mass. 595; *Greves v. Shaw,* 173 Mass. 205; Maine: *State v. Hamlin,* 86 Me. 495; Ohio: Laws of 1894, p. 166; Connecticut: Laws of 1889, p. 106; Tennessee: *State v. Alston,* 94 Tenn. 674. But it is hardly necessary to say that the construction given to these statutes would have no application to cases *where words expressly providing for the estates of non-residents are omitted.*" (Italics mine.)

The *Eidman* case disposes of another basis for the majority opinion, namely, that by applying the law of Great Britain for the purpose of determining who are the legatees of the testator the state of Washington has, for the purposes of the present case, adopted the British law as part of our statutes of inheritance. Hence, it is said that the "Fantome" passed to respondents by the laws of this state within the purview of Rem. Supp. 1945, § 11201.

A similar contention was rejected by the United States supreme court in the *Eidman* case in the following language:

"To say that we recognize by comity the law of a foreign domicil as controlling the transmission or succession of personal property because it thereby becomes *our* law, (and the property therefore taxable) as is indicated in some cases, notable in *Alvany v. Powell*, 2 Jones Eq. 51, is misleading and little more than a play upon words. When we speak of our laws we mean to be understood as referring to our own statutory laws or the common law we inherited from the mother country, and when we apply the laws of a foreign domicil we do so, not because they are our laws, but because upon principles of comity we recognize those laws as applicable to the particular case. But to speak of such foreign laws as thereby becoming 'the intestate laws of any State or Territory,' wherein they are enforced, is practically to confound the whole distinction between the law of the *situs* and the law of the domicil. We do not enforce the law of Spain in this case because it is our law, but because the practice of all civilized nations is to recognize the law of the domicil as governing the transmission and inheritance of personal property, and to prevent the confusion that would follow, if estates, situated possibly in half a dozen countries, were administered and distributed according to the laws of each country in which any portion of such estate happened to be located. We decline to hold the tax involved in this case applicable to this estate because the words of the statute do not require it, and because the thing taxed, that is, the transmission of the property to the legatees or next of kin, takes place in a foreign country."

Whatever effect is given by this state to the laws of Great Britain, in determining who are the legatees of the testator, arises by virtue of principles of comity and not by reason of our statutes of inheritance.

The majority states that there is no ambiguity in § 11201, *supra*. But the fact that the members of the court entertain such divergent opinions as to its meaning would strongly indicate that this is not correct. Since there appear to be two possible interpretations, the court is bound to adopt the one favorable to the taxpayer and against the taxing power. *Pacific First Federal Sav. & Loan Ass'n v. Pierce County, supra*. The majority does not apply the rule to this case.

However desirable the collection of an inheritance tax may be under the circumstances of this case, we are bound by the language actually used by the legislature in § 11201, *supra,* and should interpret its ambiguous wording most favorably to the taxpayer. The majority opinion, as I view it, substitutes words in this section which the legislature did not use and has persisted in *not* using for more than fifty years.

For the reasons stated herein, I am of the opinion that the legislature, in enacting Rem. Supp. 1945, § 11201, did not manifest an intention to levy an inheritance tax upon the transfer by will of tangible personal property located in this state and owned by a nonresident of the United States whose will was executed and probated in a foreign country.

Since, as I view it, the legislature in enacting § 11201, *supra,* has not attempted to tax a transfer of title such as we now have before us, it is not necessary to determine in this case whether the state has the *power* to tax such a transfer.

The judgment of the trial court should be affirmed.

SCHWELLENBACH, C. J., GRADY, and HILL, JJ., concur with DONWORTH, J.

September 6, 1952. Petition for rehearing ordered withdrawn upon stipulation.